## Stucky, Guardian, et al. v. Smith, Exor.

(Decided May 16, 1912.)

### Appeal from Fayette Circuit Court.

1. Attorneys—Fee of Guardian Ad Litem—Allowance of Fee.—In fixing an allowance to a guardian ad litem or corresponding attorney, the court should take into consideration the character of the litigation, the value of the estate, the nature, duration and extent of the services performed, the responsibility resting upon the attorney, and the result of his efforts.

2. Same.—When the duration of service is spoken of, it does not mean the number of years that the litigation may have been permitted to remain in court, but the length of time which had been given by counsel in preparation for the trial of the case.

3. Same.—In fixing the fee of a guardian ad litem, the court must decide concerning the value of the services rendered · without reference to the opinions of parties or other witnesses, and in an action where the interests represented by the guardian ad litem approximated $150,000, and the litigation covered a period of six months, an allowance of $3,000 by the chancellor is held reasonable and his finding will not be disturbed.

SAMUEL M. WILSON, JOHN M. STUCKY for appellants.

JNO. S. BOTTS, SHELBY & SHELBY for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This is the second appeal of this case. Upon the former appeal the correctness of a judgment of the Fayette Circuit Court, construing the will of Byron McClelland, deceased, was called in question. The question involved upon this appeal is the value of the services of John M. Stucky, who, as guardian ad litem and corresponding attorney for certain infant and non-resident defendants, participated in the preparation of the former suit for trial, and also represented said infants and non-resident defendants in the appeal to this court. The lower court fixed the value of his services at $3,000. Being dissatisfied therewith, he appeals; and the repre-

sentatives of the estate, insisting that the allowance was too much, have prosecuted a cross-appeal.

Byron McClelland died in 1897, leaving a will, dated January 28, 1896, which was duly admitted to probate in the Fayette County Court, and is as follows:

"I, Byron McClelland, of Lexington, Kentucky, wish-ing to revoke all former wills and testaments; being of sound mind, uninfluenced by any other desire than to dispose of my property as to me seems best, do declare this to be my last will and testament. I wish my just debts to be promptly paid.

"I bequeath to my brother, Wallace McClelland, or his children, if he be dead (excepting Frances) ($5,000) five thousand dollars.

"I also bequeath to my sister, Mrs. Lucy Shishmanian, or her children, if she be dead ($5,000), five thousand dollars.

"I bequeath all of the residue of my estate, both real and personal, or of any other description to my wife, Sallie, forever; but charge this residue which I give my wife with the following bequests:

"FIRST: To pay my brother, J. W. McClelland ($30) thirty dollars per month as long as he may live.

"SECOND: To pay to my niece, Francis McClelland, $10,000 on the day of her marriage for her sole and separate use.

"THIRD: That at my wife's death her executors or administrators shall turn over to my brother, Wallace McClelland, and my sister, Mrs. Lucy Shishmanian, or their children if either or both are dead (excepting Frances McClelland, my niece) one-fourth of whatever remains of the residue of the estate that I had bequeathed to my wife, Sallie, forever.

"FOURTH: That at my wife's death her executors or administrators shall turn over one-half of whatever remains of the residue of my wife, Sallie, forever, to my niece, Frances McClelland, for her sole and separate use.

"FIFTH: The remaining one-fourth of residue I left my wife, she may dispose of by will or if she makes no will to follow the law descent.

"I appoint my wife, Sallie, executrix without bond.

"IN WITNESS of the above, I, Byron McClelland, have hereunto set my hand and seal to this will and testament contained in two (2) pages upon each of which

I have also written my name at Lexington, Kentucky, this the 28th day of January, 1896.

"BYRON MCCLELLAND."

His widow, Sallie McClelland, believed that under said will she took the fee in all of the property left by her husband, and that the estate was charged only with the payment of the special devises named therein. In January, 1905, she brought a suit in which she sought guidance and direction of the chancellor as to how she should carry out the provisions of the will as to these special bequests. She filed with her said suit what purported to be a settlement of the estate of her husband that came to her hands, and asked that it be approved and confirmed.

On March 5, 1906, John M. Stucky was appointed guardian ad litem for the infant defendant, Frances McClelland. On January 4, 1908, the plaintiff filed an amended petition, making certain non-residents defendants to the suit, and, on the same day, the said Stucky was appointed corresponding attorney for them. On January 6, 1908, he was appointed corresponding attorney for J. W. McClelland, and on January 13th he was appointed corresponding attorney for Byron McClelland, Jr., son of Wallace McClelland. On February 17th, plaintiff filed a second amended petition, and on February 24th the said Stucky was appointed guardian ad litem for four resident infants, namely, Frances, John, Inez and Sarah McClelland, children of Wallace McClelland, a devisee under the will. So that he was representing, as guardian ad litem, the infants, Frances, John, Inez and Sarah McClelland, children of Wallace McClelland, and as corresponding attorney, Lucy Shishmanian (sister of the decedent and a devisee under his will) and her children, John, Orienta and Lucy, and John W. McClelland, a brother of decedent, for whom the annuity of thirty dollars a month was devised, and Byron McClelland, a son of Wallace, a brother of decedent and a devisee under his will.

Upon an examination of the will, appellant was of opinion that the widow did not take the fee in all the property devised to her therein, but merely a life estate in three-fourths thereof, and that the fee as to this part was in the parties whom he represented. He thereupon filed appropriate pleas, putting in issue the nature and extent of the widow's title to said property. In effect, he

asked for a construction of the will of Byron McClelland.

In its preparation the case was permitted to drag from January, 1905, when the petition was filed, until December, 1908, when the final judgment was entered in the circuit court; so that, while the litigation covered a period of practically four years, there was no necessity for its taking more than ninety days, had the condition of the docket been such that the questions raised could have been promptly considered by the court. The final judgment was entered on the 7th of December, 1908, the appeal filed in this court December 14th, following, and at the January term, 1909, the opinion of this court was delivered. 132 Ky., 284. This case was returned to the circuit court with directions, and a judgment in conformity with the opinion was rendered. The only thing remaining to be done was to require an accounting on the part of the administratrix. Appellant was proceeding to have this done when the widow died.

Frances McClelland, who, under the provision of the will as interpreted by this court, took a half interest in the estate, reached her majority and discontinued the services of appellant. Mrs. Shishmanian entered into a contract with him, employing him to represent her, and thus terminated his services as corresponding attorney for her, if they had not theretofore been terminated by entering her appearance when she filed an answer in the case. And the other defendants having an interest in the estate being represented by counsel of their own selection, appellant was left without a client, under his appointment, and his only remaining interest in the estate was to have determined a fair and reasonable fee for the services which he had rendered. He entered a motion to have this fee determined and allowed him, and filed, in support of his motion, several affidavits. The court allowed him $1,000 on account, and the case was continued. Later, proof was taken showing the extent and value of the services rendered, and, upon final consideration, appellant was allowed $2,000 additional, making a total allowance of $3,000, as above indicated.

In fixing an allowance to a guardian ad litem or corresponding attorney, the court should take into consideration the character of the litigation, the value of the estate, the nature, duration and extent of the services performed, the responsibility resting upon the attorney, and the result of his efforts. As stated, the litigation in-

volved a construction of the will of Byron McClelland. As such, it was a question of law. It was not necessary to, nor was appellant called to investigate any question of fact or to take proof in support of his side of the controversy. The estate was worth approximately $200,000, and appellant represented three-fourths thereof, or $150,000. The litigation extended over a period of four years in the lower court and some three months in this court. It should not have extended over a period of six months in both courts. However, the fact that no greater progress was made in the lower court is not properly chargeable to any fault on the part of appellant. It seems rather to have been due to the inability of the trial judge, on account of the congested condition of his docket, to dispose of questions as they arose. Motions and demurrers would be entered and not disposed of until months thereafter; and to this cause, rather than any fault of counsel, may the delay be ascribed. The efforts of appellant were well directed, and the lower court, and this court materially aided by the result of his research. The responsibility imposed upon him by the trust was no greater than that which rests upon every lawyer accepting employment in a case, to-wit, to see to it that his client's case is properly, expeditiously, fairly and fully presented. This appellant did. His efforts were crowned with success. He got for his clients all that he claimed for them and all they could possibly have received. For this service he is entitled to a fair and reasonable fee. The fact that the litigation dragged through about four years does not entitle appellant to four years' compensation, nor to the same compensation he would be entitled to if this service had actually been rendered throughout that time. Where a pleading is filed and stands a year on demurrer, with nothing done in the meantime, the lawyer is entitled to no more compensation than he would be if, when the pleading was filed, the demurrer thereto was passed upon within a reasonable time thereafter. So that, when the duration of service is spoken of, it does not mean the number of years that the litigation may have been permitted to remain in court, but the length of time which had been given by counsel in preparation for the trial of the case. The question before us is, therefore, much simplified. As stated, it could have been disposed of in the lower court in from sixty to ninety days at most. Had the

trial been expeditiously conducted in that court, the whole litigation would not have extended over a period exceeding six months. This was ample time within which to prepare the case for trial and have every question in it satisfactorily determined. The preparation made for the trial in the lower court was, of course, of great aid to counsel in briefing the case in this court.

What would be a reasonable fee, then, for a guardian ad litem and corresponding attorney, representing interests approximating $150,000 in an estate worth $200,-000 in a litigation covering a period of six months? We think $3,000 a most liberal allowance. There was no uncertainty about appellant's fee. In accepting the appointment, he was assured in advance that he would receive a reasonable fee for his services, and it was the duty of the court to see that it was reasonable—fair to the estate as well as to appellant. The law imposes upon the court the duty to fix this fee. Section 38, subsection 4 of the Code, provides:

"The court shall allow to the guardian ad litem a reasonable fee for his services, to be paid by the plaintiff and taxed in the costs. * * * The court must decide concerning such value without reference to the opinions of parties or other witnesses."

The court must necessarily, in order to determine what is a reasonable fee, acquaint himself with the character and extent of the services rendered by the guardian ad litem and corresponding attorney. This information is usually acquired during the progress of the trial, but where, as in the case at bar, the judge who is called upon to fix the fee, did not sit during the trial of the case, it becomes his duty either to read the record or hear proof as to the character and extent of the services rendered, for which the fee is sought. The record in this case is not voluminous, and the special judge evidently familiarized himself with the services rendered by appellant before fixing his fee, and was doubtless qualified to pass upon and determine what it should be, without taking into consideration the additional proof offered by appellant for the purpose of showing what services had been rendered by him. Certainly, with the record and all this evidence before him, he was as well qualified to fix the fee as though he had in person conducted the trial of the case. We think the amount fixed by him was liberal. In reaching this conclusion, we would not, in the least, min-

imize the value of appellant's services, for we know that he was, at all times, active, diligent and alert. Still, the compensation allowed is ample for the services rendered and although several able attorneys have fixed the fee that should have been allowed him at a larger sum, we are thoroughly satisfied that any one of these lawyers would have been glad to have accepted the employment under a contract fee materially less. However, whether they would have done so or not can have no bearing upon this case, for all of the evidence offered by appellant as to the value of his services must, under the plain provisions of the Code, be rejected, and could not properly have been considered by the chancellor in fixing appellant's fee.

Perceiving no reason for disturbing the finding or decision of the chancellor, the judgment on the original and cross appeal is affirmed.