## Axton v. Vance.

### Same v. Same.

(Decided February 20, 1925.)

Appeals from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Interest—Client Liable for Interest from Date Attorney's Services were Completed.—Client is liable for interest on account due attorney from date services were completed.

2. Pleading—Plea of Plaintiff's Indebtedness to Defendant Held Properly Stricken from Answer as Tendering no Issue.—Plea that plaintiff owed defendant stated sum, receipt of which petition admitted, held properly stricken from answer as tendering no issue.

3. Pleading—Plea that Plaintiff, by Agreement with Another Attorney, was to Receive Only Part of Fee Held Properly Stricken from Answer.—Plea that plaintiff, by agreement with another attorney not party to suit, was only to receive certain proportion of fee for value of services held properly stricken from answer.

4. Pleading—Allegations as to Amount Attorney Saved Client Held Properly Stricken from Latter's Answer.—In action for value of attorney's services, allegation that amount plaintiff saved defendant by securing reversal of judgment ·was gross saving to be reduced by certain expenses, held properly stricken from answer, though important item of evidence.

5. Estoppel—Attorney Held Not Estopped by Client's Settlement with Colleague to Claim More than Agreed Proportion of Fee.— Attorney agreeing with another attorney to take certain proportion of fee held not estopped by client's settlement with colleague to claim more than such proportion of value of services rendered by both attorneys.

6. Trial—Court Cannot Limit Number of Witnesses.—Civil Code of Practice, section 593, authorizing court to stop production of further evidence on particular point, does not authorize court to limit number of witnesses, though he may refuse to tax as costs more than allowance to two witnesses, under Ky. Stats., section 904.

7. Evidence—Hypothetical Question Must Not Include Facts Not Shown, Nor Omit Relevant Facts· Shown, by Testimony.—Hypothetical question must not include facts not shown, nor omit relevant facts shown, by some testimony.

8. Attorney and Client—Elements Considered in Determining Amount of Fee.—In determining amount of attorney's fee, amount, and character of services rendered, labor, time and trouble involved, nature and importance of litigation or business, responsibility imposed, amount of money or value of property affected, skill and experience called for, attorney's professional character and standing, and results secured, should be considered.

9. Evidence—Defendant Asking Expert no Hypothetical Question Based on His Testimony Cannot Complain of Question Predicated on Plaintiff's Testimony.—That hypothetical question to plaintiff's expert was predicated on plaintiff's testimony theretofore given, and not on defendant's subsequent testimony, held not ground for objection by defendant, who failed to cross-examine witness by hypothetical question framed on testimony defendant expected to introduce.

10. Attorney and Client—That Client Worked up Facts Does Not Affect Value of Attorney's Services.—That client, under attorney's direction, worked up facts, which enabled attorney to win case, does not affect question of value of latter's services.

11. Evidence—That Lawyers Testifying as to Value of Attorney's Services could Not tell Value of Colleague's Services Immaterial. —That lawyers, asked hypothetical questions as to value of at-

torney's services, could not tell extent or value of services rendered by attorney's colleague, held immaterial.

12. Evidence—Hypothetical Questions can be Based on Facts Sustained by Any Testimony.—Hypothetical questions can be based on any state of facts sustained by any testimony, though there is conflicting testimony.

13. Evidence—Testimony in Response to Hypothetical Question Containing Some Generalities Held Properly Admitted.—Evidence of value of attorney's services, in response to hypothetical question specifying all essential matters with great particularity, though containing some generalities, as did attorney's testimony on which based, held properly admitted.

14. Evidence—Depositions as to Value of Attorney's Services Held Properly Excluded as Based on Deposition Not Presented to Jury.—Depositions stating opinions as to reasonable fee for legal services rendered by plaintiff held properly excluded as primarily based on witness' recollection of plaintiff's deposition, which was not incorporated in question presented to jury, nor offered in evidence.

15. Evidence—Facts on which Expert Opinion is Desired should be Submitted in Question.—Facts on which expert opinion is desired should be submitted to witness in question, and his answer should be his opinion, not his conclusion.

16. Evidence—Deposition as to Value of Plaintiff's Legal Services Held Properly Excluded as Based on Incomplete Statement Thereof.—Deposition stating opinion as to value of legal services rendered by plaintiff held properly excluded as drawn from incomplete statement of plaintiff's services in latter's deposition more than two months before trial.

17. Evidence—That Plaintiff's Deposition could Not be Filed as Exhibit Held Not to Render Admissible Deposition Based Thereon.—That one sued for value of attorney's services could not file latter's deposition, which was court record, as exhibit, did not render admissible deposition, based on witness' recollection thereof, as to value of services, as defendant could have filed official copy as part of question propounded to his witness.

18. Attorney and Client—Unnecessarily Large Record in Case Tried by Attorney Suing for Compensation Held Not to Show Excessive Verdict.—That record in case, wherein attorney suing for compensation represented defendant, was unnecessarily large, as stated in Supreme Court's opinion, held not to show that verdict for plaintiff was too large; Supreme Court's remark being directed to opposing counsel, and matters which defendant contended should have been omitted being ones that won case for him.

19. Attorney and Client—$5,500.00 for Attorney's Services in Divorce Suit Held Not Excessive.—$5,500.00 for attorney's services in divorce suit held not excessive, in view of skill required to get certain evidence into record, clearing of client's reputation, money,

and humiliation saved him, and testimony of 25 skilled and reputable lawyers as to value of services.

WOODWARD & WARFIELD and JOHN MARSHALL, JR., for appellant.

DUFFIN, RAY, VANCE & DUFFIN and TRABUE, DOOLAN, HELM & HELM for appellee.

Opinion of the Court by Drury, Commissioner—
Affirming both cases.

Appellant in the first case is complaining of a judgment for $2,497.00, with interest from July 12, 1919, and in the second case of a judgment for $1,997.00, with interest from June 25, 1923. Axton was represented in the case of Axton v. Axton, reported in 182 Ky. 286, 206 S. W. 480, and 184 Ky. 615, 213 S. W. 548, by two attorneys, the appellee Vance of Louisville, and E. B. Anderson of Owensboro, and when their services were concluded they asked Axton for a fee of $15,000.00, of which they told him $8,000.00 should be paid to Vance and $7,000.00 to Anderson. These men were not partners, having been merely associated together in the representation of Axton.

The appellee, Vance, sued appellant Axton for a balance of $6,997.00, with interest from July 12, 1919, claimed to be due him after allowing credit for $1,003.00 upon a fee of $8,000.00 charged appellant by Vance, for services rendered him as his attorney in the case of Axton v. Axton, supra.

In his answer, Axton says:

"Defendant denies that he has refused to pay any part of the fee claimed, but says that he has offered to pay and is now willing to pay the sum of $2,497.00 in addition to the sum of $1,003.00 which he has heretofore paid the plaintiff, and denies that there is now due to the plaintiff from defendant the sum of $6,997.00, or any sum in excess of $2,497.00."

At this juncture Vance moved for a judgment for the $2,497.00 which was not controverted, and the court entered judgment against Axton for $2,497.00, with interest from July 12, 1919, to which action of the court Axton reserved exceptions, and he has appealed therefrom. His objection was that the court allowed interest

on this $2,497.00 from July 12, 1919, when its payment was requested, and the propriety of allowing this interest is the question before us on this first appeal. Vance's services to Axton were completed on July 12, 1919. Whatever Axton should have paid for those services was then due, and Axton should then have paid it. As he did not, it is right that he pay interest on it.

In Spaulding v. Mason, 161 U. S. 375, 16 Sup. Ct. 592, 40 L. Ed. 738, the Supreme Court, in speaking through Mr. Justice White, quoted with approval from Curtis v. Inneraity, 6 How. 146, 12 L. Ed. 380, the following language:

> "It is a dictate of natural justice, and the law of every civilized country, that a man is bound in equity, not only to perform his engagements, but also to repair all the damages that accrue naturally from their breach. . . . Every one who contracts to pay money on a certain day knows that, if he fails to fulfill his contract, he must pay the established rate of interest as damages for his nonperformance. Hence it may correctly be said that such is the implied contract of the parties."

In Henderson Cotton Mfg. Co. v. Lowell Machine Shops, 86 Ky. 668, 9 Ky. L. R. 831, 7 S. W. 142, this court said:

> "The true ground upon which to put the allowance of interest is the fault of the party who is to pay the debt. If he has made default of payment, then *ex aequo et bono,* he should reimburse the creditor for keeping him out of the use of his money. He should render an equivalent for the use of what is not his own. If there be a specified time for payment, and a failure to then pay, or a demand of payment of a liquidated claim and default, then the debt should, as a matter of law, bear interest from the time of such failure. This is the current of authority, and it is supported by both right and reason."

Axton, in his answer, admits that he owes Vance a balance of $2,497.00 for services, which the record shows were rendered prior to July 12, 1919. That money was then due. The only reason Axton owes this now is he owed it then. He was satisfied in his own mind then that he owed that much. If his conscience then accused

him of owing that much, he should have paid it to Vance; and at least eased his conscience. He did not pay it. There may be two reasons why he did not. If he felt that he needed this money worse than Vance did, he should not now after having had the use of it, object to paying Vance interest for the use of money which he admits should have then been paid to Vance. If, on the contrary, he felt that Vance needed this money worse than he did, and withheld payment in the hope that Vance, *ex necessitate,* would settle on Axton's terms, then he was prompted by an improper motive, and the payment of interest is really an inadequate punishment. This interest is all there is in controversy on the first appeal. The court properly allowed it, and its judgment is now affirmed.

After the entry of this judgment, Axton paid Vance $2,500.00, thus making a total sum paid of $3,503.00, and leaving a balance claimed by Vance of $4,497.00, with interest. The case was prepared and heard before a jury which by its verdict fixed the value of Vance's services at $5,500.00, subject to a credit of $3,503.00, and without interest. The court entered judgment for $1,997.00. Axton has appealed from that judgment, and has filed seven grounds for a new trial.

After examining appellant's grounds for a new trial we find: First, the court properly struck from Axton's amended answer his allegation, that Vance owed him $1,003.00, as Vance in his petition admitted receipt of that, hence this plea tendered no issue. We further find that the court did right in striking from appellant's answer his plea that Vance was only to receive 8/15 of this fee. As this was an action by Vance for the value of his services, Anderson was not a party to this suit, and Axton was in no wise interested in the agreement Vance and Anderson had with each other.

In his petition, appellee had alleged that securing the reversal of this judgment saved Axton $25,935.00. In his answer, Axton admits a saving of $21,000.00, but insists that was a gross saving, and that it is to be reduced by certain expenses in order to obtain the net saving. The court properly struck all of that, as the question here is the value of Vance's services, and what

he may have saved Axton has no place in this pleading, though this saving is an important item of evidence. Axton, in paragraph two of his answer, pleaded that he had settled with Anderson, and that by reason of that, Vance was estopped to claim more than 8/15 of the value of all the services rendered by these two attorneys, and to this plea the court very properly and promptly sustained a demurrer. The agreement alleged clearly does not constitute an estoppel against appellee in this action. The fact that he agreed with Anderson to take 8/15 of the fee of $15,000.00 to be charged as against 7/15 for his colleague, Anderson, is not inconsistent with his recovering what his own services were reasonably worth. It is admitted by the answer that appellant agreed to pay appellee what his services were reasonably worth—that is, what he is suing for here—he can recover no more— he should recover that much. It is not alleged that appellee had anything to do with or ever knew of the settlement with Anderson. He cannot, therefore, be chargeable with the consequences of that settlement. This disposes of Axton's first ground for a new trial.

Second, beginning with the filing of his answer, and continuing throughout the case, Axton constantly endeavored to have the court limit the number of witnesses. This the court properly refused to do. By section 904 of the statutes, the court could refuse to tax as costs more than the allowance to two witnesses, but we know of no authority under which the court may limit the number of witnesses which a party may introduce upon a controverted question. In section 593 of the Civil Code we find this:

> "The court, however, may stop the production of further evidence on a particular point, if the evidence upon it be already so full as to preclude reasonable doubt."

That does not support Axton's contention. It is against him, and the authorities cited in his brief are also against him. The court did not err when it ruled against him.

Third, appellant insists that the hypothetical question propounded to the witnesses by whom Vance sought to establish the value of his services, was not properly drawn, and that therefore the evidence of these witnesses should not have been admitted. What this question

should be is thus defined in the case of Ky. Traction & Terminal Co. v. Humphrey, 168 Ky. 611, 182 S. W. 854:

> "The hyphothetical question grouping therein the facts forming the premises upon which the answer of the witnesses must be based must include no facts not shown by some of the testimony to have existed; nor must it omit any relative fact shown by some of the testimony to have existed."

This court has in numerous cases defined the elements that should be considered in determining the amount of an attorney's fee for services rendered. They include the following:

(a) Amount and character of services rendered.

(b) Labor, time and trouble involved.

(c) Nature and importance of the litigation or business in which the services were rendered.

(d) Responsibility imposed.

(e) The amount of money or the value of property affected by the controversy, or involved in the employment.

(f) Skill and experience called for in the performance of the services.

(g) The professional character and standing of the attorneys.

(h) The results secured.

The witnesses called by Vance qualified themselves by training and experience to appraise the value of these services by reference to their "market value"—that is, to the standard of fees usually charged by and paid to lawyers for services of like character. They show a careful and painstaking study of the various elements proper to be considered in fixing a value upon a lawyer's services, and a thorough study of the facts assumed in the hypothetical question. The objections urged against Vance's hypothetical question are substantially these: That the question is predicated upon Vance's testimony theretofore given, and not upon Axton's testimony thereafter given. How could Vance's counsel frame a hypothetical question based upon the suspicion that Axton might or might not thereafter introduce testimony in his own behalf at variance with Vance's testimony?

If Axton desired to cross-examine Vance's expert witnesses upon the basis of some hypothetical question

framed upon testimony Axton expected to introduce in his defense, he should have prepared his question and done so. Having failed to do so, he cannot object to the competency of the question submitted to and answered by Vance's expert witnesses. It is interesting, though not important, to note the argument in Axton's brief, that Axton won his own case because, under Vance's direction, he worked up the facts. Of course, he did. In honorable practice the lawyer is not supposed to furnish the facts for his client, or the witnesses to prove them. The lawyer's function is to develop the issue and present to the court the evidence supplied or secured by the client. Of coure, Vance could not have won Axton's case without the evidence. After all, it was Axton's case, involving an inquiry into his life and into the intimate relationship between him and his wife. Why should not his lawyer call upon him freely and constantly for help in developing the necessary testimony?

Again, the hypothetical question is criticised on the idea that the lawyers to whom it was put could not tell the extent or value of the services rendered in the divorce case by Vance's colleague, Anderson. However, that question does not concern us in this case. Vance was not suing, and he could not sue to recover for Anderson's services. Finally, we quote, in support of Vance's hypothetical question, from the opinion of this court in Kentucky Traction & Terminal Co. v. Humphrey, *supra*:

"  . . . Hypothetical questions can be based upon any state of facts that any of the testimony sustains, although there may be conflicting testimony."

It is true, there were some generalities in this question, as well as some generalities in Vance's evidence, but we do not feel there was enough to render the evidence inadmissible. To have gone into particulars would have rendered both so long that it would have tired and confused the jury, hence we are inclined to view the matter as the trial court did, and as the question did specify with great particularity all essential matters, the admission of this evidence is now approved.

Fourth, the court refused to permit Axton to read the depositions of Judge Dorsey and Judge Birkhead, and for this reason he says he should have a new trial. After testifying to the high character and professional reputa-

tion and ability of Mr. Vance and his colleague, Mr. Anderson, Judge Dorsey was asked if he had read the record in the old divorce case, with a view to forming an opinion about a reasonable fee for services rendered by Vance or by Vance and Anderson in that case. He answered in the affirmative and was next asked if he had read the 56 pages of typewritten deposition given by Vance as if upon cross-examination. He answered this question also in the affirmative. Thereupon he was asked to give his opinion as to a reasonable fee for Vance's services, " . . . assuming that Mr. Vance rendered such services as are described in his deposition taken as if upon cross-examination, and such as may be inferred from the record in the divorce case above referred to." In answer to this question, Judge Dorsey gave his conclusion, fixing $7,000.00 as a reasonable fee for both Vance and Anderson, and $4,000.00 as a reasonable fee for Vance.

The failure to incorporate the Vance deposition in the question put to Judge Dorsey or in his answers thereto, left his answers based upon his recollection of a document never presented to the jury. The fundamental basis of Judge Dorsey's deposition is the Vance deposition, which was never presented to the jury or offered in evidence. This is not an expert opinion upon facts assumed in the question. It is usurping the functions of the jury and forming a judgment upon matters not presented to the jury. In Aetna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S. W. 523, this court said:

> "The facts upon which the opinion of the expert was desired should have been submitted to him in a question, and his answer should have been his opinion and not his conclusion."

The deposition of Judge Dorsey violates this fundamental rule. The facts were not submitted to him in a question. He was asked if he had read the court record and if he had read Vance's deposition, and then asked to tell the jury his conclusion as to the value of Vance's services. Moreover, Vance's deposition, which Axton's counsel did not offer to read to the jury, was taken April 11, 1923, more than two months before the trial, and in giving it Vance repeatedly stated that he was not prepared, in answer to a blanket question by Axton's counsel, to cover in detail his services; that he expected to

attend the trial in June and then give his testimony in full.    Hence Judge Dorsey's conclusion was drawn from an incomplete statement of Vance's services, even if Judge Dorsey remembered, in giving his own deposition, everything contained in Vance's deposition.    Counsel for Axton suggest that they could not take a record of the court, and the Vance deposition was such a record, and file it as an exhibit in this case.    That is true, but they could have taken an official copy of it and by filing that copy as a part of a question propounded to Judge Dorsey, have thus got it into the record.    Then they could have read it to the jury, and the jury would have known upon what Judge Dorsey based his opinion, and the judge's evidence would have been competent.    Under the procedure adopted, however, there was no way for appellant to read this Vance deposition to the jury, hence the jury could not know upon what Judge Dorsey based his opinion.    Judge Dorsey's evidence so taken was not competent, and for the same and other reasons, Judge Birkhead's deposition was incompetent.

Fifth, appellant contends that this case was prejudiced by the instructions given by the court, and the refusal of the court to give the instructions appellant offered; but this contention is without merit.    The instructions were more favorable to him than to Vance, and we can see no good that can result from an elaboration of this statement.

Appellant's sixth and seventh grounds for a new trial, and his amended grounds one and two, all amount to the same thing—that is, the verdict is too large in view of the evidence—appears to have been rendered by the jury under passion and prejudice, and is not supported by the evidence.    He insists that Vance made the record in the former case unnecessarily large and quotes from the opinion:

"The case could and should have been prepared in not exceeding five hundred pages of record instead of more than twenty-one hundred pages, as now made up."

Vance could not control Mrs. Axton's counsel in that matter, and it appears that the remark quoted was directed to them.    He insists further that Vance put matters into the former record that should have been omitted.    The members of this court are familiar with

the former record. Axton was successful, and when the two opinions in the former case are read, the reader will know, just as this court knows, that it was the inclusion of those matters which Axton says now he wanted omitted, that won the former case for Axton. We know the services Vance rendered Axton in that case. To him then they meant everything. To him now they mean nothing, but to the impartial student of the former case, it is convincing that Axton had legal services of the very highest order, for which he should be happy to pay, and for which, happy or unhappy, he must pay. To get into this former record the occurrences in the bridal chamber, required the very highest of legal skill and to state to any lawyer the things proven in that record will elicit from him the query: "How did he do it?" That he did do it shows the skill with which Axton's case was practiced. Axton got himself into this trouble when he married a woman who did not love him. Men have done that before, but no man ever was extricated from such a situation on better terms than Axton. By the victory, his attorneys cleared his reputation, saved his money, and kept him from being humiliated. Taking all the evidence in the case, on both sides, that admitted as well as that excluded, and twenty-five men whom we know to be honest, skilled and reputable lawyers, have testified as to the value of Vance's services, and the $8,000.00 asked by Vance is about $1,000.00 less than the average of what those witnesses said the services were worth.

The very essence of government is the administration of justice. In the administration of justice a trained corps of attorneys is indispensable. We find no greater problems here than the proper disposition of cases that have not been properly practiced in the trial courts, and are poorly presented here. A circuit judge, coming to a county seat to hold a term of court, would be only temporarily embarrassed if the sheriff should die, for the proper authority could soon appoint another, and in like manner, a master commissioner, a clerk, a trustee of the jury fund, or a jailer could be secured, if these offices were vacant; but if there were no attorneys present he could not proceed. A felony case could not be tried, an indictment could not be returned, a civil case could not be properly determined, for an attorney cannot be made by mere appointment. Besides innate ability, it takes years of study, experience, and self-sacrifice to make a

lawyer. Men who have made these sacrifices, who have undergone this training, and whose services are so indispensable in the administration of justice, should be paid, and the pay should be enough to enable them to live decently and to attract to that profession men of the very highest type. When litigants have had the services of a capable and faithful attorney, they should have enough gratitude to pay him promptly, and if they lack gratitude, and pay not under the promptings of conscience, then they should not complain when required to pay under judgment of the court.

Both judgments are affirmed by the whole court. Judge Dietzman declined to sit because he was a witness in the trial court.