THE FIRST NATIONAL BANK & TRUST CO.,
ADMR., ET ALS.
vs.
CLARENCE BLAKESLEE

Superior Court     New Haven County     File #50704

Present: Hon. PATRICK B. O'SULLIVAN, Judge.

Pond, Morgan & Morse,     Attorneys for the Plaintiffs.

Alcorn, Mitchell & Alcorn,     Attorneys for the Defendant.

**MEMORANDUM FILED MARCH 29, 1937.**

O'SULLIVAN, J.  The object of this action is to recover

for professional services rendered by the law firm of Alling, Webb & Morehouse to C. W. Blakeslee & Sons, a co-partnership, which for convenience will be referred to as the contractors.

In 1915, the contractors began the construction of a dam for the Board of Water Commissioners of the City of Hartford. Among abnormal conditions created by the war during 1916 and 1917 was a scarcity of labor and materials with a resulting algebraic increase in the cost of both. Accordingly, the contractors notified the Board that they intended to stop operations unless some plan could be formulated to protect them financially from a situation which could not reasonably have been anticipated when the contract was executed. From the city's angle, it was imperative that the dam be erected as speedily as possible. Consequently, the Board agreed to waive a penalty clause predicated upon a time limitation for the completion of the dam and also to reimburse the contractors for the additional cost, that could be attributed to war conditions, of the unfinished work. Thereupon the contractors resumed work and eventually finished the dam.

In order that the Board might legally be empowered to pay the additional compensation, the parties agreed to request the General Assembly to pass enabling legislation to that end. The contractors retained Mr. Morehouse as their attorney and legislative agent to prepare a bill for the consideration of the Assembly and by all proper means to assist in urging its enactment into law. It so happened that no objection developed from any source and on May 2, 1919, after passage by both Houses, the bill was approved by the Governor.

Shortly thereafter, the personnel of the legal department of the Board changed and new counsel advised the contractors that the additional compensation could not be paid because the Act of 1919 was unconstitutional. Nevertheless, negotiations for a settlement were begun and continued by Mr. Morehouse although without success. He finally brought an action against the Board to recover one hundred and sixty-five thousand ($165,000.00) dollars which represented the war-caused loss suffered by the contractors in completing the dam after the supplementary agreement for reimbursement had been made. The trial court sustained a demurrer to the complaint from which action an appeal was successfully taken to the Supreme Court of Errors. Further negotiations were resumed

and further procedural tactics taken in the pending suit in which Mr. Morehouse continued to represent the contractors.

In 1929, it appearing that a settlement of the controversy was impossible and that a trial would be inevitable, Mr. Blakeslee, at Mr. Morehouse's suggestion, retained as associate counsel Messrs. Benedict Holden and Hugh M. Alcorn, of Hartford. This course was pursued partly because of the need of expert trial counsel in a case as complex in its facts as was the one in question and partly because Mr. Morehouse anticipated that he might be required to take the witness stand at the time of trial. Mr. Morehouse, however, did not cease to cooperate with his associates, but continued to work upon matters he deemed of importance in connection with the preparation of the case. Unfortunately, he died in 1931. Thereafter his firm did nothing in furtherance of Mr. Blakeslee's suit against the Board.

To complete the story, it might be added that it was not until 1934 that the matter was referred to a State Referee who rendered his report, which, after the substantial overruling of a remonstrance to it by the Board, was accepted. Judgment thereupon entered for the contractors to recover a sum, which after an unavailing appeal to the Supreme Court of Errors, amounted, with interest, to three hundred twenty-nine thousand six hundred ninety-one dollars and ninety-five cents ($329,691.95).

The bookkeeping system in vogue in the office of Alling, Webb & Morehouse during the time covered by the foregoing events was for each member and associate to enter upon a diary his activities for the day and to make a charge for each item considering the time consumed in proportion to a fixed schedule of so much per day. When Mr. Morehouse died, there was in the ledger to which the diary items had been transferred a large number of entries for services rendered. By the mathematical process of addition, these totalled ten thousand seven hundred and twenty-one ($10,721.00) dollars and the balance due thereon, after the application of various payments on account, was approximately sixty-five hundred ($6,500.00) dollars.

Defendant's counsel argues that the reasonable value of Mr. Morehouse's services must be determined from his own appraisal as it appears in his books of account on the theory that he, better than anyone else, could best evaluate them.

This is more plausible than sound. Professional services are not to be classified with bags of flour or other merchandise, and the books of account of an attorney are not to be likened to those of the corner grocer. When the latter makes a charge against a customer, that limits the extent of liability. But with a professional man, the ultimate outcome of those affairs of his client to which his attention has been given, ought to and does have considerable bearing on what he may reasonably charge. If his efforts are marked by success, that is a factor of no mean significance which legally and ethically permits him to place a higher value on his services than if the outcome has been unsatisfactory.

In **Axton vs. Vance, 207 Ky. 580, 269 S. W. 534,** eight different elements are stated as those to which consideration may be given in fixing the fair value of an attorney's services. They are:

1. The amount and character of the services rendered.
2. The labor, time and trouble involved.
3. The nature and importance of the litigation.
4. The responsibility imposed upon counsel.
5. The amount of money or value of the property affected by controversy or involved in the employment.
6. The skill and experience called for in the performance of the services.
7. The professional character and standing of the attorney.
8. The results secured.

See, also, **Baxter vs. Szucs, 248 Mich. 672, 227 N. W. 666; Nelson vs. Arach, 62 N. D. 594, 245 N. W. 819; Taylor vs. Scarborough, 66 Fed. (2nd) 589; In re Campbell, 224 N. Y. Sup. 263.**

Counsel for the plaintiffs further simplifies the present problem by conceding that if the ultimate success is to be ignored, the balance indicated upon the ledger represents fair and reasonable compensation, absorbing, as they admit it does, all the other elements enumerated in the Axton case. It is, of course, obvious that in estimating and making his charges Mr. Morehouse could not evaluate the outcome of the litigation, for that was as yet undetermined. Hence, as he did not weigh that factor in fixing his charges, this court may now do so and add to the footings of the ledger such a sum as is reasonable and fair to balance the effect of this particular element, unless some rule of law prevents this course of action.

The defendant submits two propositions by either of which he maintains that he is not obligated beyond the extent of the ledger balance. In passing, it might be observed that Mr. Blakeslee concedes an indebtedness to the plaintiff. His plea of tender of the sum of seven thousand ($7,000.00) dollars is an admission of liability. **Rowell vs. Ross, 87 Conn. 157.** In the first place he takes the position that the death of Mr. Morehouse terminated the relation of attorney and client, and his estate can recover only the reasonable value of the services actually rendered up to that time. Such a postulate merely begs the question for one reverts to the query of what is the reasonable value of the services of the deceased. His accomplishments were not, as counsel aptly observes, in reaping the harvest but in preparing and sowing the field. His work had a direct relation to the final successful outcome. His death neither added to nor detracted from the efficacy of his labors. Had he lived, the element of success would have had a bearing on the extent of his fee and this cannot be eliminated by his death.

Nor does the fact that Mr. Morehouse thought of the possibility of his becoming a witness prevent consideration of the same element of ultimate success. Until he knew with greater certainty than was apparent that his role must change from that of advocate to that of witness, he was under no obligation to withdraw from the case. **Jennings Co., Inc. vs. Di-Genova, 107 Conn. 491.** It is only where he foresees that his testimony would be indispensable to the proper maintenance of his client's cause that our Code of Professional Ethics demands that an attorney should resign the trial of the case to other counsel. This point had not been reached by Mr. Morehouse.

What sum, then, should be added to Mr. Morehouse's charges to offset the element of ultimate success? To strike the right answer is not a problem to be solved with mathematical precision. Three members of the Bar, testifying on behalf of the plaintiff, placed the value of all the services between thirty and thirty-five thousand dollars. Of these one reached his conclusion upon a formula apportioning percentages to the efficacy of Mr. Morehouse's accomplishments in comparison with that of trial counsel. There is not the slightest intention of deprecating the work of the former in stating that the formula appears unbalanced. Obviously, the success of trial counsel could not have been attained unless the ground

work had been prepared, but it is likewise true that the ground work would have been without value had the case not been won. Of all the factors which existed in the successful outcome of the litigation, none is more impressive than the manner in which the justice of the contractors' cause was developed by trial counsel, particularly through the admirable cross-examination of the witness, Saville.

With the opinion of these eminent gentlemen of the bar the Court regrets it cannot agree. Serious reflection leads to the conclusion that fifteen thousand ($15,000.00) dollars represents the reasonable value of the services, weighed by all essential elements necessary to be considered. Of this sum, four thousand one hundred and eighty-two ($4,182.00) dollars should be credited for payments made on account. This leaves a balance of ten thousand eight hundred and eighteen ($10,818.00) dollars, to which interest from April 30th, 1936, should be added.

Let judgment enter for the plaintiffs to recover of the defendants eleven thousand four hundred and thirteen ($11,413.00) dollars.