Mary W. McKay, Executrix of Last Will and Testament of Dwight McKay, Deceased, and Leslie H. Whipp, Appellants, v. August A. Wilhelm, Appellee.

Gen. No. 42,104.

Heard    in the first divi-

398

sion of this court for the first district at the February term, 1942. ▮
▮ Opinion filed November 30, 1942.

Royal W. Irwin, of Chicago, for appellants.

Seymour N. Cohen, of Chicago, for appellee.

Mr. Justice McSurely delivered the opinion of the court.

Dwight McKay and Leslie H. Whipp, attorneys, represented the defendant August A. Wilhelm in a suit in the superior court and obtained a decree in his favor. Subsequently the case was appealed to the Supreme Court where the same attorneys secured an affirmance. Thereafter Dwight McKay died and this suit is brought by the executrix and Whipp to recover attorneys' fees for services rendered in the appeal to the Supreme Court. The case was tried before a jury, which returned a verdict for the defendant, and plaintiffs appeal.

The complaint alleged that defendant promised to pay plaintiffs the fair and reasonable value for their services in the Supreme Court, and also that defendant had promised to pay them $25,000 for such services.

The jury returned a special finding that the defendant did not make a special agreement with plaintiffs to pay them $25,000 for their services in the appeal. Plaintiffs introduced testimony of experienced attorneys to the effect that the services rendered by them in the Supreme Court were worth, one witness said $27,500 to $30,000, and the other witness placed the value at $50,000. The defendant introduced the testimony of one attorney that the services were worth $1,100.

All of the facts and issues presented in the trial of the case in the superior court are found in detail in the opinion in *Scully v. Wilhelm*, 368 Ill. 573. It there ap-

pears that the nephews and nieces of Mary Scully Fagan (Mrs. Wilhelm) sought to have her marriage to the defendant annulled on the ground that she had not sufficient mental capacity to enter into a valid marriage; it was alleged that Wilhelm, by false pretenses and undue influence, had persuaded her to execute deeds to parcels of real estate to herself and defendant as joint tenants; that he was 35 years of age, without business ability or financial means, and she was 75 and had considerable property at the time of the alleged marriage on May 6, 1933; that thereafter defendant persuaded her to indulge in a course of life beyond her endurance, taking her to night clubs and dances; that by reason of the conduct of defendant towards her she suddenly and mysteriously died, intestate, in September 1933. There were many other allegations to the effect that defendant was conspiring to obtain her property (over $400,000) as she was aged and mentally weak. The charges against him involved his reputation and his moral character and were of an extremely serious nature.

Plaintiffs say that defendant agreed to and did pay them $75,000 for their services rendered in connection with the suit in the superior court but that this did not include any services rendered in the appeal case in the Supreme Court, and this is the decisive question presented.

The decree, favorable to defendant, was entered in the superior court on July 2, 1937; notice that plaintiffs in that case would ask for leave to appeal to the Supreme Court was filed July 11, 1937. October 28, 1937, McKay and Whipp had a conversation with defendant with reference to their fees. It was then agreed that defendant would pay them $75,000 in full for services rendered in the trial of the main case "in the superior court . . . Case No. 591863, the decree . . . entered July 2, 1937,"—to be paid as soon as

the final account in the estate of defendant's deceased wife was approved in the probate court. This was signed by defendant.

Whipp testified that on November 18, 1937 he and McKay discovered that the record in the Supreme Court had not been filed within the time prescribed by rule and they prepared and presented a motion to dismiss the appeal. Counter-suggestions were made to this motion and the Supreme Court entered an order dismissing the appeal.

Evidently all of the parties thought at this time that the litigation was ended, and an order was entered in the probate court approving the account, and funds were ordered released from the custody of the First National Bank of Chicago where the funds in the estate, approximating $400,000, were held. After the order in the probate court was entered these funds or part of them were released to defendant, and between December 5th and 13th he paid McKay and Whipp $75,000.

Subsequently the Supreme Court changed its order dismissing the appeal and took the case, and thereupon the probate court order approving the account was set aside and defendant was ordered to turn back all the money and property that had been turned over to him. At his request McKay and Whipp returned the $75,000 paid to them, except that each of them were permitted to retain $1,000 to defray the expenses in connection with the motion to dismiss the appeal.

Plaintiff Whipp testified in great detail to the services rendered by himself and McKay in the Supreme Court in defending the superior court decree. January 20, 1938, their briefs were filed in the Supreme Court and the case was argued orally. April 15, 1938, the Supreme Court rendered an opinion affirming the superior court's decree.

Subsequently there were conferences between McKay, Whipp and the defendant—the attorneys claim-

ing that they were entitled to additional compensation for their services in the appeal case in the Supreme Court and that the previous payment of $75,000 was in full only for the services in connection with the trial of the superior court case, in accordance with the agreement of October 28, 1937. Defendant testified that he understood this payment was not only for such services but for all subsequent services which might be necessary.

After the case had been concluded by the decision and opinion in the Supreme Court and the defendant's final account approved in the probate court, the First National Bank again turned over to defendant funds in its possession and defendant again paid McKay and Whipp $75,000, receiving from each of them a receipt reciting that this payment was for services in connection with the superior court case and did not include any services rendered or costs expended in the appeal to the Supreme Court.

Counsel for plaintiffs argues that the documents relating to fees contained the complete agreement of the parties, without ambiguity, and that no parol evidence can be admitted to add other terms, citing *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102. This is the general rule but not applicable here. The only agreement signed by defendant does not contain a complete agreement as to fees. The matter of fees for services in the Supreme Court is not definitely fixed. Defendant agreed to pay $75,000 to his attorneys when his final account in the estate of his wife was approved in the probate court. As this was not finally approved until after the decision in the Supreme Court, it could be argued that the $75,000 was to cover all fees and costs of producing this favorable result.

On the other hand, when the appeal in the Supreme Court was dismissed all the parties evidently thought this was the end of the litigation, and defendant testi-

fied that he was willing to pay $75,000 for the services rendered up to that time. From this it could be argued that defendant understood this payment covered only services rendered up to that time and not additional services to be rendered in the future. When there is uncertainty or incompleteness in the terms of an agreement parol testimony to explain is admissible. *Fuchs & Lang Mfg. Co. v. R. J. Kittredge & Co.*, 242 Ill. 88, 94. We hold there was no error of the trial court in permitting oral testimony as to the understanding of the parties.

Counsel for plaintiffs offered and was permitted to introduce in evidence the abstract and briefs filed in the Supreme Court for the purpose of proving the character of the litigation. The court in admitting this evidence suggested that counsel for plaintiffs defer reading to the jury from these until the argument; that if during the argument he wished to refer to parts of these exhibits counsel might do so. In the argument counsel for plaintiffs attempted to read from those exhibits, stating that the records in the Supreme Court showed that certain charges were made against the defendant. Objection to this was sustained. Again plaintiffs' attorney attempted to state the charges made against the defendant in the litigation and insisted that the jury had the right to know its character; that the value of these services depended in part on the charges made and the difficulty of defending against them. The trial court sustained an objection to any such matters, on the ground that it "may tend to inject any false issue in this case." As the court had refused to permit the jury to examine the briefs filed in the Supreme Court and closed the door to any argument presenting the issues there involved, the jury were not fully informed as to the character of the litigation.

The value of legal services ofttimes depends upon a variety of considerations, such as skill, the nature of the controversy and the amount at stake and the time

and labor bestowed. *Louisville N. A. & C. Ry. Co. v. Wallace,* 136 Ill. 87, 93. In *Schmalz v. Arnwine,* 118 Ore. 300, the opinion quoted with approval from 2 Thornton on Attorneys at Law, §§ 535, 536, that evidence in such cases may be introduced for the purpose of showing the importance of the cause to the client, also the responsibility assumed by the attorneys and the time and labor expended and their ability. In *Thorp v. Ramsey,* 51 Wash. 530, it was held that the records and files in the prior actions were entirely competent for the consideration of the jury in an action to recover the reasonable value of services performed by an attorney in such cause. In *Axton v. Vance,* 207 Ky. 580, an attorney sued for fees. The court held that the jury was entitled to know the character of the matters in controversy and that the high degree of skill shown by the attorney saved his client's reputation and standing in the community. In *Stucky v. Smith,* 148 Ky. 401, the trial judge who was called upon to fix the value of services in a prior suit read the record in that case and based his opinion partly upon what it contained. This was held to be proper. In *George v. Wright* (Tex. Civ. App.), 286 S. W. 656, a suit brought to recover attorney's fees for services rendered in another case, the trial court admitted pleadings in the original cause in which serious charges were made against the client, only for the purpose of showing the nature of the issue involved in the original suit and the amount and character of the work required to be performed by the attorney in defending against these charges. The court instructed the jury that the truth or falsity of these charges was not is issue; that the evidence of them was admitted only as bearing upon the reasonableness of the attorney's fees. This was approved on appeal. We find no case and none is cited disapproving of this practice.

The court in admitting the briefs and abstract in evidence, limited their purpose to "showing what service was rendered by" defendant's attorneys in the Su-

preme Court. By the refusal to permit them to be taken to the jury room or to allow plaintiffs' counsel to read from them to the jury on the ground that this might "tend to inject a false issue in this case," the jury was in effect told that it was not permitted to know anything about the nature of the prior controversy and the other matters mentioned in the above cases as proper to be considered by the jury. The best evidence of the issues involved was in the pleadings. Opinion testimony as to this would not be as convincing. It is apt to be partial—note the wide difference in the opinions of the experts as to the value of the services—from $1,100 to $50,000.

Complaint is made of alleged prejudicial remarks by the trial judge, such as the court's comment on permitting plaintiffs to introduce certain bits of evidence —it may go to the jury "for what it is worth." Such remarks, while not necessarily requiring a reversal, would impart to the jury the impression that the court did not consider the evidence as being of much importance. It is axiomatic that in a jury trial the jury alone may weigh the evidence.

It is my opinion that it was reversible error not to permit reading to the jury from the briefs and abstract filed in the Supreme Court, only for the purpose of showing the nature of the issues there involved and the skill of the attorneys in defending against the charges there made, and the jury should be instructed as in *George v. Wright,* cited above.

A further reason for reversal is that the verdict is against the manifest weight of the evidence.

The judgment is therefore reversed and the cause remanded for a new trial.

*Reversed and remanded.*

MR. PRESIDING JUSTICE MATCHETT specially concurring: I agree with the conclusion that the verdict is against the manifest weight of the evidence and that

there should be a new trial. I do not think the abstract and briefs filed in the Supreme Court were admissible in this case.

Mr. Justice O'Connor specially concurring: I agree with the conclusion reached in the opinion but not in all that is said. ''The value of legal services will oftentimes depend upon a variety of considerations, such as the skill and standing of the person employed, the nature of the controversy, the character of the questions at issue, the amount or importance of the subject-matter of the suit, the degree of responsibility involved in the management of the cause, the time and labor bestowed.'' *Louisville N. A. & C. Ry. Co. v. Wallace,* 136 Ill. 87, 93. To hold that in proving the reasonable value for legal services it is proper to admit in evidence the briefs and abstract of the case in which the services were rendered and which were filed in our Supreme Court, is, in my opinion, wholly unwarranted. Juries are made up of laywomen and laymen and it is obvious they would not be able to determine the legal value of services rendered by counsel and would be but little enlightened by the reading of the brief prepared and filed by him in the Supreme Court. The brief and abstract were clearly inadmissible. In my opinion, the proper way to prove the value of legal services in such a situation is to call a qualified lawyer who had examined the record, abstract and briefs, to give his opinion as to what such services were reasonably worth, bearing in mind all the things mentoned in the quotaton from the *Wallace* case.