## Axton v. Axton.

(Decided November 29, 1918.)

### Appeal from Daviess Circuit Court.

1. Divorce—Alimony.—A wife who is in fault in the separation, and who in a suit by her husband for divorce on the grounds of abandonment, counterclaims, alleging cruel and inhuman treatment as a ground for divorce to her, is not entitled to recover alimony, if upon the facts of the case she was not entitled to a divorce.

2. Divorce—Refusal to Consummate Marriage Vow—Abandonment.— Where the cause of separation is the refusal of the wife to con-

summate the marriage, and she leaves the husband because he insists on his marital rights and to be received as husband, the husband may, after the expiration of one year, maintain an action for divorce upon the grounds of abandonment, and the wife can not defeat the action by alleging cruel and inhuman treatment where her only evidence on that point is, that the husband, by argument and persuasion, attempted to induce her to yield to him.

E. B. ANDERSON and BURTON VANCE for appellant.

W. P. SANDIDGE and BLAKELY, QUIN & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This action was commenced by Woodford F. Axton, of Louisville, in the Daviess circuit court, against his wife, Mrs. Jessie Axton, to obtain a divorce from the bonds of matrimony on the grounds that she had more than one year previous to the institution of the action, in January, 1917, willfully abandoned him and his home.

The parties to this action are sensible, refined and highly respectable persons, but being of very different temperaments and possessing widely divergent views of the proprieties and manifold relations of life, have unfortunately failed to guide the marital craft into the port of happiness.

The defendant, Mrs. Axton, before her marriage, was Miss Jessie Jolly, daughter of a distinguished Owensboro lawyer and man of affairs, while the plaintiff, Mr. Axton, is a manufacturer of large means in the city of Louisville; and both enjoy the respect and confidence of a large circle of friends. After a courtship of more than two years, they were married July 2nd, 1915, and started immediately on their bridal trip, going by way of Cincinnati, then to Chicago, where they spent a few days; from there they traveled by boat to Detroit, where again they stopped for a short visit, thence returning home by way of Cincinnati. Before they were fairly started on this trip, which, by common consent, should have been the happiest of their lives, differences arose which grew and increased in the sight and consideration of the parties until at the end of a ten days' trip they were each discontented, miserably unhappy, and altogether dissatisfied with their bargain. Neither appeared to understand the other, or to sympathize with him in his unhappy state. Each expected too much of the other and offered

too little love and affection. While they were each quite old enough to have known, they never seemed to have discovered their incompatibility until just about ten minutes after the conclusion of the marriage ceremony, and they were pronounced man and wife. If either did make this discovery he or she concealed it until it was too late to save the embarrassment and heart aches which have constantly pursued them since that unhappy day. But no sooner were they pronounced man and wife than they began to wake up to the incongruous status of affairs and each to blame the other for their predicament. It was a misfit marriage. They lived as husband and wife just fifty-seven days, but only thirty-three of this number were spent together, and all of these full of trouble. At the end of the fifty-seven days Mrs. Axton returned to her father's home at Owensboro, and informed her husband by letter of her purpose never to return. They had comfortable apartments at the Seelbach Hotel, in Louisville, and were well surrounded, except for themselves. It all started when the wife uncompromisingly refused to perform the marital obligations, and stubbornly repulsed her husband. She declared she did not feel towards him as a wife should to fulfill such duties or to become a mother. He insisted and she refused. The longer the argument the greater the antagonism. Finally she withdrew, the only honorable course to pursue. It was not his fault, because he provided well for her and appeared willing in every way imaginable to perform his obligations. It would be hard to conceive a more patient or considerate husband under such embarrassing circumstances. This she acknowledges in several of the many letters written by her to him before the commencement of the action, and which letters are copied into this record.

The action for divorce was commenced by Mr. Axton under that section of the statute providing for a dissolution of the marriage relation on the application of the party not in fault, for one year's abandonment. The wife answered and set up a counterclaim asking divorce be granted to her on grounds of cruel and inhuman treatment, under a statute which reads as follows:

"To the wife, when not in like fault for the following causes:

"2 Habitually behaving toward her by the husband, for not less than six months, in such cruel and inhuman manner as to indicate a settled aversion to her, or to destroy permanently her peace or happiness.''

The evidence offered by each side is voluminous and the whole constitutes more than two thousand pages of typewritten matter. There is, however, but one controverted point, who was in fault in the separation? While each was more or less at fault, no human can be perfect, there was no good reason why they should not have lived happily together except that defendant refused to acknowledge her obligations as a wife, and this it may be conceded she would have done except for the discordant temperaments of the two. Had she done so graciously no doubt all would have gone well. Each owed to the other respect, confidence, affection, love and all those sacred connubial tendernesses which bless and enrich the married state, and the law both of God and man has ever recognized and protected these relations. That the wife in this case failed to fully consummate the marriage relation is clear from all the evidence. While she insists in general terms that she did her full duty in this respect, when it comes down to the last analysis, it is very doubtful. Of course no one could know what took place in the sacred precincts of the bridal chamber, save the contracting parties, and as they disagree as to what happened, we must turn for the facts to the expert testimony of the physicians and surgeons who made examination of the person of the wife for the purpose of ascertaining if her genital organs had been penetrated by the male organ. Here again we are confronted with conflicting testimony, because one of the physicians gives it as his opinion that the wife had indulged in sexual intercourse, while the other is quite sure she had not, but both agree that if she had it was necessarily of a superficial nature and not more than a very few times, if indeed at all. If learned physicians and surgeons can not be certain that the wife has consummated the marriage, after a careful examination of the female organs following an alleged marriage relation of fifty-seven days, it may reasonably be asserted that there was a denial to the husband of conjugal rights, in a case where the parties are strong and physically fit, as appears to be true of the parties litigant. We refrain for obvious reasons from

copying into this opinion the evidence introduced on this point, and content ourselves with giving the conclusions to be drawn from it.

It has frequently been held that an abandonment may be accomplished in law without leaving the house in which the two live if one of the parties refuse to recognize the marriage relations or to cohabit with the other. Evans v. Evans, 93 Ky. 516; Zumbiel v. Zumbiel, 113 Ky. 46; McQuinn v. McQuinn, 110 Ky. 328.

One who willfully violates the marriage vow, denies the obligation and refuses consummation, can not withdraw from the covenant and thereafter successfully maintain or defend an action instituted to redress the wrong. The party in fault is not entitled to divorce or alimony. Defendant abandoned the plaintiff on her own account and the abandonment had continued for more than the statutory period at the time plaintiff instituted the action, but the alleged cruel and inhuman treatment of which the defendant complains in her counterclaim, is wholly unsupported by the evidence, unless it can be said that a persistent effort, by argument and persuasion, on the part of the husband to induce the wife to consumate the marriage and to acknowledge him as husband, amounts to such. While the decree of the learned chancellor, who so patiently and carefully heard and considered the case below, granting divorce to the wife, can not be reversed because of a statutory regulation, this court can examine the evidence for the purpose of ascertaining whether the allowance of alimony to the wife and fees to her attorneys are proper and reasonable or the contrary. As said in the recent case of Wesley v. Wesley, 181 Ky. 135, and supported by a long line of decisions, a spouse who is in the wrong and who is not entitled to a divorce, is not entitled to alimony or maintenance. The conduct of the wife in this case in persistently refusing to acknowledge the plaintiff as husband was the sole cause that produced the separation, and this being true she is not entitled to alimony, although attorneys who represented her are entitled to a reasonable fee to be allowed by the court and to be paid by the husband. Her right to alimony or maintenance rests entirely upon the equity of her cause, and where she willfully abandons her husband without cause—and this may be effectually accomplished while she continues to live with him if she

denies him his marital rights—he is not bound to provide for her or render her separate support or alimony.

An allowance of a thirty-five hundred dollars fee to attorneys for the wife, under the facts in this case, appear excessive. While we recognize the importance of the case and the great volume of evidence taken and the consequent effort entailed upon counsel, we are yet constrained to the belief that the fee should not have exceeded twenty-five hundred dollars, and this sum will be taxed as cost against the plaintiff. The case could and should have been prepared in not exceeding five hundred pages of record instead of more than twenty-one hundred pages, as now made up. While it is the desire of the court to be liberal in the allowance of fees to counsel, it must first be just to parties litigant.

The judgment is reversed with direction to set aside so much thereof as allows the defendant alimony in the sum of twenty thousand dollars and fixes attorneys' fees for the defendant at thirty-five hundred dollars. The court will enter judgment dismissing the claim for alimony and enter an order fixing the fees for attorneys for defendant at twenty-five hundred dollars, and tax the same as cost against the plaintiff.

Whole court, except Chief Justice Settle, sitting.