## F. E. HEATH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

### Docket No. 6015.   Promulgated May 27, 1927.

1. Petitioner sold an interest in a dairy property to an employee more than a year prior to March 1, 1913, and another certain interest to a second employee more than a year subsequent thereto, and more than a year prior to March 1, 1913, bought and leased certain dairy cattle and dairy facilities from a corporation not engaged in the dairy business. *Held*, that the sale and purchase prices so received and paid did not constitute a true measure of the fair market value of such property.

2. Petitioner acquired a herd of dairy cattle at different dates prior and subsequent to March 1, 1913, and by elimination, breeding and purchase maintained the standard of such herd, which was sold in 1919. *Held*, that in the light of the evidence adduced in this proceeding there was no accrued depreciation at date of sale.

3. Depreciation on physical property of the petitioner, other than herd of dairy cattle, determined by the Commissioner approved, except as modified by a stipulation.

4. The community income involved in this proceeding was properly determined to be the taxable income of the petitioner, *United States* v. *Robbins*, 269 U. S. 315; *Appeal of D. Cerruti*, 4 B. T. A. 682.

*Everett S. Layman, Esq.*, for the petitioner.
*George G. Witter, Esq.*, for the respondent.

The Commissioner has found a deficiency in income and profits tax for the year 1919 in the amount of $6,156.20. The controversy arises from diverse computations of gain from the sale in 1919 of certain dairy ranches and of the stock and equipment thereof, made by the petitioner and the Commissioner. The main issue relates to the depreciation of a dairy herd acquired in part prior to March 1, 1913, and in part subsequent thereto.

Depreciation of plant and equipment is also involved. The sale was made on the installment plan and there is no dispute as to the Commissioner's method of computing tax liability on the payments made.

### FINDINGS OF FACT.

The petitioner is an individual citizen of the United States and of the State of California, who is engaged in the dairy business near the City of Berkeley. In 1907 he leased the Pleasanton No. 1 Ranch for dairy purposes from George Davis, who reserved a one-third interest. He at once erected buildings on the leased land at a cost of $17,000. About four months after the lease was signed Davis died, and his widow put her son in the place of the deceased. Some six months later he sold his interest to Mrs. Davis for $25,000. In 1911 the Davises sold the ranch and dairy to the Spring Valley Water Co., which bought the property for the sole purpose of securing the water thereon and promptly offered to lease the dairy privileges and sell the buildings, appurtenances and cattle. The petitioner leased the property and bought, for $20,100 cash, 280 head of cattle and all the dairy buildings and equipment. He set to work to improve the plant and dairy herd, buying and installing new machinery, buying cows when he found good small herds for sale at reasonable prices, and buying pure bred cattle. He disposed of the bulls then on hand and bought pure bred sires. When he had any cattle for sale there was a demand for them among neighboring dairymen because of the high reputation of the Pleasanton Dairy.

In March, 1912, petitioner sold a one-third interest in the ranch to John Wipfli, one of his foremen on another ranch, for $12,500, making the latter a partner in the business. The terms of the sale were $2,500 cash and $10,000 to be paid from the profits of the business as they accrued.

In June, 1913, petitioner leased Pleasanton Dairy No. 2 from the Spring Valley Water Co. and took possession in October of the same year. He immediately plowed and graded between 280 and 300 acres of land and seeded it to alfalfa; built several houses, sheds and barns; sunk wells and then in March, 1914, put dairy stock on it. In the latter part of the year he sold forty-two one hundred and twenty-sevenths of this dairy to Wipfli.

In 1916 he sold ten one hundred and twenty-sevenths of both dairies to one Gwerder, another foreman, for $10,000. The parties agreed that after the sale to Gwerder, the petitioner still owned seventy-five one hundred and twenty-sevenths of the combined properties. In 1919 the petitioner sold his remaining interest in the combined properties for $85,000 and other considerations, and re-

ceived in that year as a first installment on such sales price the amount of $7,456.14. According to the terms of this sale the purchase price was to be paid from the profits of the business. The vendees agreed to deliver all the milk to the vendor at his retail dairy headquarters in Berkeley and allow him a differential of 2 cents per gallon under the regular wholesale prices during a period of 20 years or such part of that time as a certain contract that the dairymen should pay that amount into the Retail Milk Dealers' Association remained in force. The Milk Dealers' Association contract was rescinded a short time prior to the hearing of this case.

The March 1, 1913, value of the cattle on Pleasanton Dairy No. 1 was:

| Animals | Number | Average value | Total value |
|---|---|---|---|
| Cows | 440 | $85 | $37,400 |
| Bulls | 5 | 150 | 750 |
| Heifers | 250 | 45 | 11,250 |
| Totals | 695 | | 49,400 |

Later in 1913 petitioner purchased 20 cows at $85 per head and in 1915 he added to the herd 7 purebred cows for which he paid $2,700, increasing the total value and cost to $53,800.

Payments for Pleasanton Dairy No. 2, were made as follows:

| Year | Animals | Number | Average price | Total outlay |
|---|---|---|---|---|
| 1914 | Cows | 265 | $85 | $22,525 |
| 1915 | do | 67 | 55 | 3,685 |
| 1915 | Bulls | 3 | 250 | 750 |
| 1919 | Dairy cattle | | | 4,949 |
| Total | | | | 31,909 |

The bulls purchased were all pure bred and of the best dairy types. The old were disposed of and new purchased somewhat more frequently than once in two years. All the best of the heifer calves were retained and the herds were thus replenished and brought to a higher standard from year to year. The average cost of bringing a calf to maturity was $119, and the average sale price or salvage value of cows no longer useful for dairy purposes was $40.

All receipts from the sales of cattle for beef, veal, and other purposes and the sale of milk and all disbursements and losses for and from the herds and in the production and sale of milk were reported in the tax returns from year to year. Some depreciation was reported for several years and disallowed and afterwards a part of it allowed. No allowance was asked or made for exhaustion, wear

and tear of the herd after 1915. Allowances were made for losses of cattle by death.

The parties stipulated correct rates of depreciation for certain groups of physical assets, other than dairy cattle, as follows: buildings, 5 per cent; machinery, wagons, and harness, 10 per cent; ice plant and equipment, 10 per cent; horses, 16⅔ per cent.

### OPINION.

Lansdon: In computing the gain resulting from the sale in 1919 of the properties involved in this proceeding, the respondent relies for value at March 1, 1913, (1) on the price paid the Spring Valley Water Co. for the lease and herd on Pleasanton Dairy, Ranch No. 1, prior to March 1, 1913; (2) on the price at which certain interests in the two properties were sold to Wipfli and Gwerder in 1912, 1914, and 1916, and (3) on his theory that the dairy herds were subject to depreciation from 1913 for animals acquired before that date and from date of acquisition for animals acquired subsequent thereto. We shall discuss these contentions in the order set forth.

The evidence is conclusive that the Spring Valley Water Co. purchased the property known as Pleasanton Dairy Ranch No. 1, solely for the purpose of securing the water thereon and the water rights pertaining thereto. This company is engaged in the business of selling water to the people and City of San Francisco. It sold the dairy herd and dairy appurtenances which it purchased from the Davises at a price that we can not regard, in all the circumstances, as a true measure of the fair market value of such property at the date of sale.

The petitioner was engaged in the dairy business on a large scale. The properties in question represented only a part of his interests in such industry. He testified that he did not have time to give proper personal attention to all his properties and that he sold the interests to Wipfli and Gwerder, his employees at the time, for a price much below actual value for the purpose of securing the interested services of reliable men in the operation of the property. It is not unusual for men with large business interests to dispose of shares of their property to trusted employees at less than actual value for the purpose alleged here. We are convinced that the prices received from the sale of the several interests to Wipfli and Gwerder did not accurately reflect the fair market value of the properties at the dates of such sales.

Section 202 of the Revenue Act of 1918 provides as follows:

Sec. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and

(2) In the case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with section 203.

Section 214 of the Act is in part as follows:

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

\*          \*          \*          \*          \*          \*          \*

(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business \* \* \*.

The petitioner has proved that there was no diminution and that on the contrary there was a continuous and very appreciable increase in the actual productive capacity of the herd from year to year during the whole period of his ownership, and contends that this clearly evidences that the respondent erred in including accrued depreciation of such herd as a factor in computing gain from the sale thereof.

The facts here indicate an accounting procedure by the petitioner that is equivalent to making annual additions to a reserve for depreciation and simultaneously charging all the cost of maintaining the standard of the herd against such reserve. The effect was the measurement of annual depreciation by the cost of replacements for each year. There was, therefore, no accrued depreciation at date of sale and the respondent erred in making such deduction from the basic cost of the property. Compare the result reached here with *Haugh & Keenan Storage & Transfer Co.* v. *Heiner*, 20 Fed. (2d) 921, and with our decisions, *Appeal of Cleveland Home Brewing Co.*, 1 B. T. A. 87; *Appeal of Russell Milling Co.*, 1 B. T. A. 194; *Appeal of Rub-No-More Co.*, 1. B. T. A. 228; *Appeal of Hamilton Manufacturing Co.*, 3 B. T. A. 1045; *Appeal of Western Star Milling Co.*, 5 B. T. A. 109.

From the evidence adduced at the hearing, we are not able to make any definite findings of fact as to the cost, the useful life, or the value at the date of sale of the plant assets and irrigation facilities of the petitioner. Subject to certain stipulations of the parties which we have incorporated in our findings of fact, we approve the action of the Commissioner in computing depreciation on the property, other than the dairy herd, involved in this transaction and in including such depreciation as a factor in his determination of gain realized from the sale of an interest in such property in the year 1919.

It is alleged in the petition that under the laws of California the gain involved was a part of the income of a marital community, one-half of which should be taxed to Laura Heath, wife of the peti-

tioner. The Commissioner denied this allegation in his answer to such petition. At the hearing neither party referred to this point or adduced any evidence in respect thereof. The entire deficiency is determinable against the petitioner. *United States* v. *Robbins*, 269 U. S. 315; *Appeal of D. Cerruti*, 4 B. T. A. 682.

*Judgment will be entered on 20 days' notice, under Rule 50.*