## BELKNAP et al. v. UNITED STATES.

District Court, W. D. Kentucky, Louisville Division.

No. 446.

March 8, 1944.

Franklin P. Hays, Robert P. Hobson, and Woodward, Dawson & Hobson, all of Louisville, Ky., for plaintiffs.

Samuel O. Clarke, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Courtnay C. Hamilton, Sp. Assts. to Atty. Gen., and Eli H. Brown, III, U. S. Atty., of Louisville, Ky., for defendant.

MILLER, District Judge.

The plaintiffs, William B. Belknap and Edith M. Belknap, his wife, brought this action to recover of the defendant, United States of America, the sum of $4,440.22 with interest, being the amounts paid by them under protest following a deficiency income tax assessment for the calendar years 1937 and 1938.

### Findings of Facts

1. In the fall of 1928 the plaintiff, William B. Belknap, a farmer of Oldham County, Kentucky, made a trip to England for the purpose of buying some of the best sheep raised there, for which he thought there was a demand in Kentucky. On this trip he purchased 44 Southdown sheep for $5,771.11 which were shipped in to him in Oldham County, Kentucky, in 1929. In 1930 he bought 13 more Southdown sheep for which he paid $1,633.42, making the total cost for the Southdown sheep $7,404.-53. In 1935 he bought 45 Dorset sheep at a cost of $958.40. During the years 1929, 1930 and 1931, 9 Southdown sheep died and one was sold. After 1931 no record was kept as to sheep which died and the sale prices of all sheep sold after 1931 were reported in income without cost deduction.

2. The purchase of the sheep was treated by the taxpayer as a capital expenditure. Depreciation was claimed by the taxpayer and allowed by the Commissioner of Internal Revenue on the Southdown sheep for the year 1930 in the sum of $721.39 and for the year 1931 in the sum of $797.85. No depreciation was claimed at any time after 1931, but in the audit of the taxpayer's returns and records for the years 1937 and 1938 the Commissioner of Internal Revenue allowed depreciation for 1937 on the Southdowns and Dorsets in the sum of $518.36, but of this amount $326.68 was erroneously allowed at a rate of 20% on 13 Southdowns purchased in 1930 but not entered on taxpayer's sheep account records until 1933. (Stipulated).

3. The net cost of the Southdown and Dorset sheep as of January 1, 1937, exclusive of depreciation, except for the depreciation taken and allowed for 1930 and 1931 was as follows:

| "Cost of Sheep | Southdowns Cost | | Dorsets cost |
|---|---|---|---|
| Less: | $7,404.53 | | $958.40 |
| Depreciation deducted in 1930 and 1931 | 1,519.24 | | —0— |
| | $5,885.29 | | $958.40 |
| Less: | | | |
| Sheep died (9) and sold (1) through 1931 | $1,381.30 | | |
| Deduct depreciation taken on above | 172.66 | 1,208.64 | —0— |
| Representing net cost of 151 Southdowns and 45 Dorsets | | $4,676.65 | $958.40 |
| Average cost per sheep | | 30.971 | 21.30 |
| (Stipulated)." | | | |

4. The plaintiff bought the sheep for breeding purposes, for wool and for resale. He followed the practice of building up the flock, selling practically all of the ram lambs and only a few of the ewe lambs. He kept the best of the ewe lambs in order to maintain the flock. The depreciation claimed by him on the sheep for the years 1930 and 1931 was done through the accountant who handled his books and prepared his income tax returns and with respect to those two years the taxpayer did not have his attention called particularly to the depreciation item. When he realized that the accountant was depreciating the flock of sheep for income tax purposes, when as a matter of fact it was not being depreciated but was being maintained by the methods above referred to, he discontinued claiming any depreciation on the sheep for the taxable years after 1931, and he thereafter treated and returned as income the sums received by him on the sale of sheep from time to time, and included in deductions for the said years the ordinary farm expenses in connection with maintaining this flock including cost of shepherds and feed.

5. When at times the taxpayer received a flattering offer on any of his sheep which in his opinion was more than the sheep were worth to him he sold them, although for the most part he sold only rams. He showed his sheep all over the United States and built up a reputation of having one of the best flocks on the Continent. At livestock shows he won six out of eight grand championships in the two years of 1936 and 1937. The approximate income from the sheep was for the years 1934 through 1937 inclusive as follows:

| 1934 | $1780.00 |
| 1935 | 2202.00 |
| 1936 | 1944.00 |
| 1937 | 4771.00 |

When he sold his flock in 1938 he had more sheep than he had purchased, and would have had still more except that a fire just before the sale burned up a barn full of these pure-bred sheep.

6. The taxpayer sold 140 Southdowns and 43 Dorsets in 1938 for $6,541.50, less a commission in the amount of $408.20. He also sold at the same time eleven Southdowns and two Dorsets for $622.50, which was not collected by the taxpayer until 1939. (Stipulated).

7. The taxpayer kept his books and made his returns on a cash receipts and disbursements basis on a calendar year period during all the years pertinent in this litigation. (Stipulated).

8. For the year 1938 the taxpayer claimed a loss of $2,576.13 on the sale of the sheep in that year. The Commissioner of Internal Revenue upon an audit of returns and records set up a gain of $5,457.60. The taxpayer now concedes a gain of $881.53. (Stipulated.)

The Commissioner's figures were reached by reducing the cost of the sheep through annual depreciation not only for the years of 1930 and 1931 where it was taken by the taxpayer but also for the years 1932 through 1938. The taxpayer's figures were reached by not considering depreciation for any of the years subsequent to 1931. The validity of the deficiency assessments made by the Commissioner and paid by the taxpayer for the years 1937 and 1938 depends upon whether or not the cost of the sheep should have been depreciated annually, as so treated by the Commissioner, or not depreciated after 1931 when the taxpayer considered the flock and the way in which is was being handled as non-depreciable personal property.

9. Under date of April 30, 1923 William B. Belknap, being desirous of creating for his then wife, Helen Strong Belknap, an income separate and apart from his own, transferred and conveyed to himself as trustee for Helen Strong Belknap 799 shares of the common stock of the Belknap Hardware and Manufacturing Company of Louisville, Kentucky, for the use and benefit of Helen Strong Belknap during her natural life, unless sooner revoked by the grantor in writing. In the event of the death of Helen Strong Belknap her estate had no interest in said stock or in the income or dividends thereon, but the trust was to cease and the title to the trust property was to revert to the grantor or to his estate. The instrument creating this trust contained the following provision:

"There being no consideration for the creation of this trust, other than the purpose above set out, I hereby expressly reserve to myself the right to revoke this trust, either in whole or in part, at any time that I see fit during my life, or by will."

10. Under date of July 27, 1925 a supplemental written agreement was entered

into by and between William B. Belknap, Helen Strong Belknap and the Fidelity and Columbia Trust Company, which referred to the existing trust under the instrument of April 30, 1923 and stated that it was the desire of the parties to make the terms of said trust more definite and certain and to convert said revocable deed of trust into an irrevocable deed of trust. By this instrument William B. Belknap and Helen Strong Belknap transferred to the Fidelity and Columbia Trust Company and William B. Belknap as trustees 799 shares of the common stock of the Belknap Hardware and Manufacturing Company and provided that the entire net income of said trust estate was to be paid to Helen Strong Belknap during her life and until each of the children of Helen Strong Belknap and William B. Belknap arrived at the age of 18 years. It directed that as each child of Helen Strong Belknap and William B. Belknap became 18 years of age there should be paid to it or its guardian its proportionate share of one-half of the net income, not exceeding $3,000 annually as long as said child was under 22 years of age. After all of the said children became 18 years of age Helen Strong Belknap, if then living, was to continue to receive one-half of the net income of the trust estate during her lifetime or until her remarriage. As each of said children became 25 years of age the trust was to be in part dissolved and one-half of said child's proportionate interest in said trust fund was to be given to him, or her, and when said child became 35 years of age the other one-half of his or her proportionate interest in the trust fund was to be turned over to said child. In case of the death of Helen Strong Belknap before the death of William B. Belknap the trust was to cease as to her portion thereof, and the same pass to William B. Belknap. In case Helen Strong Belknap survived William B. Belknap and did not remarry she was to have the full right to will her portion of said trust estate as she saw fit. In case of the remarriage of Helen Strong Belknap, after the death of William B. Belknap, the trust was to continue during her lifetime as to her interest therein, and at her death the trust was to cease as to her portion thereof and to pass to the children, or if there be no children then to be divided equally between Smith College in Massachusetts, Yale University in Connecticut and Berea College in Kentucky.

The trust was accepted and administered by the trustees. William B. Belknap participated in the duties of the trustee but did not dominate the trust.

11. On or about November 28, 1934, William B. Belknap filed in the Oldham Circuit Court of Kentucky Action No. 6547 in which he prayed a decree of absolute divorce from the defendant therein Helen Strong Belknap, and that he be awarded the custody and control of their three infant children, namely, William Burke Belknap, then nearly 11 years of age, Jonathan Trumbell Belknap, then 9 years of age, and Helen Strong Belknap, then 8 years of age. The petition alleged that the parties were married in September 1922 and that the defendant abandoned the plaintiff the latter part of October 1933 and had continuously since refused to cohabit with or live with him in the marital relationship. The petition also contained this paragraph "Plaintiff states that the defendant has a limited estate from which she derives an income of approximately $1200.00 a year; that this plaintiff, without regard to legal obligations so to do, is willing to make provision for her comfortable support and maintenance by agreement with the defendant, and to assume all the expense in connection with the education and maintenance of their children."

The defendant therein, Helen Strong Belknap, filed her answer and counter-claim to the petition for divorce in which she denied the grounds for divorce relied upon by the plaintiff and in which she herself prayed a decree of absolute divorce from the plaintiff William B. Belknap, that she be awarded the custody of the three infant children; that she be awarded lump sum alimony in the amount of $250,000 and the additional sum of $15,000 per year for additional maintenance; and that she be awarded reasonable attorney fees and her costs expended. The counter-claim alleged as grounds for the divorce prayed that the plaintiff William B. Belknap "has behaved toward her for not less than six months in such a cruel and inhuman manner as to indicate a settled aversion to her and has permanently destroyed her peace and happiness, without like fault, or any fault, on her part."

12. Upon submission in chief of said action No. 6547 in the Oldham Circuit Court, the court entered judgment as follows:

" * * * and the Court being advised, it is adjudged that the plaintiff's petition be and the same is hereby dismissed and that the defendant recover of the plaintiff, William B. Belknap, her costs herein expended, including her attorneys' fees in the sum of $2,000.00 to which the plaintiff excepts and prays an appeal to the Court of Appeals, which is granted. It is further ordered and adjudged that the answer and cross-petition of the defendant Helen S. Belknap, be and the same is hereby dismissed, to which the defendant excepts and prays a cross appeal to the Court of Appeals, which is granted. Defendant also excepts to the allowance of $2,000.00 attorneys' fees."

13. William B. Belknap perfected his appeal to the Court of Appeals of Kentucky, but Helen Strong Belknap did not prosecute her cross-appeal. Thereafter on October 20, 1936 the Court of Appeals of Kentucky rendered its opinion in the matter in which it was stated "The court concludes the defendant technically abandoned the plaintiff and that he is entitled to a judgment of divorce upon that ground. The evidence, we think, establishes both parties to be proper and suitable to have the custody of the three children. * * *

"We are of opinion that the plaintiff should make suitable financial provision for the defendant and for the maintenance and education of the children. It would seem that the parties may be able to agree upon this matter. If they cannot, the chancellor upon this recovery or other proof that may be presented should adjudge reasonable and suitable financial provisions.

"Accordingly, in so far as the judgment awards the fee and costs to the defendant, it is affirmed. To the extent that it denies the appellant a divorce, it is reversed, and the case is remanded for consistent proceedings."

The opinion of the Court of Appeals can be found reported in 265 Ky. 411, 96 S.W. 2d 1012, 1013.

14. Thereafter on October 30, 1936 the following judgment was entered in the action in the Oldham Circuit Court:

"In accordance with the Mandate of the Court of Appeals it is now ordered and adjudged the plaintiff, William B. Belknap, be and he is hereby divorced from the bonds of matrimony with the defendant, Helen S. Belknap, and restored to all the rights and privileges of an unmarried man.

"It is further considered and adjudged by the Court that each party shall restore to the other such property not disposed of at the commencement of this action, and either may be obtained directly or indirectly from or through the other during the marriage in consideration or by reason thereof.

"The determination of what property, if any, either received from the other in consideration of marriage and what alimony should be allowed defendant, Helen S. Belknap, is reserved for determination hereafter, provided the parties cannot agree upon said matters."

15. Thereafter on February 25, 1937 there was entered in said action in the Oldham Circuit Court a judgment styled "Agreed Judgment as to Property Rights and Custody of Children," which judgment began with the following sentence: "It is ordered and adjudged by the Court, pursuant to the agreement of the parties, and their respective counsel: This judgment provided in part as follows:

"(1) On July 27, 1925, William B. Belknap created a trust to Fidelity & Columbia Trust Company of Louisville, Kentucky, for the benefit of Helen Strong Belknap and their children. Out of the income from said trust there shall be paid by the trustee to Helen Strong Belknap Four Hundred ($400.00) Dollars on the first day of each month beginning January 1, 1937, or at the rate of Four Hundred ($400.00) Dollars per month in such installments as the Trustee is able to pay said sum, such payments to continue only during her natural life and to cease upon her re-marriage, and to be for her use and the support of the three infant children during the time they are with her, and in addition thereto said Trustee shall pay Helen Strong Belknap Two Thousand One Hundred ($2,100.00) Dollars annually from the income from said trust for the maintenance of the three children herein mentioned, and such sum shall be reduced annually Seven Hundred ($700.00) Dollars as and when each of said children leaves the home of Helen Strong Belknap, or in the event of the death of any child, but should the children not have gone to boarding school or otherwise have left the home of Helen Strong Belknap before each child reaches the age of eighteen (18) years, at which time they share in said trust fund, said allowance of Twenty-one Hundred ($2,100.-

00) Dollars shall cease proportionately as each reaches eighteen years.

"Defendant, Helen Strong Belknap, shall restore and there is hereby restored to William B. Belknap, all interest of Helen Strong Belknap in said trust fund except Four Hundred ($400.00) Dollars per month above provided, and the Two Thousand One Hundred ($2,100.00) Dollars annually for the children."

This judgment also provided that Helen Strong Belknap should have the care and custody of the three children during the periods of the school year of each year and that William B. Belknap should have the care and custody of said children during the vacation periods of each year, with the court reserving the power to modify the provisions as to the care, custody and control of the children as future events might justify. William B. Belknap agreed to pay the actual expenses incurred in the schooling of the three infant children.

The judgment also contained the following provision:

"All funds remaining from the income of the trust fund, above referred to, after an amount sufficient to pay Helen Strong Belknap said allowance for any calendar year, beginning January 1st, has been accumulated, shall be paid to William B. Belknap as and when the said funds are available, until such time as the children referred to in said trust agreement shall be entitled to share therein, at which time their respective shares shall be paid to the said children."

The judgment did not contain any obligation on the part of William B. Belknap to guarantee either the payment of $400 a month to Helen Strong Belknap or the $2,100 annually to Helen Strong Belknap for the maintenance of the children. The judgment did not contain any provision reserving to the court any power to modify or change the terms thereof relating to payments by the plaintiff to the defendant or settlement of the property rights between the parties.

16. The "Agreed Judgment as to Property Rights and Custody of Children" did not correctly set out the true agreement of the parties in stating that the payment of $400 per month to Helen Strong Belknap was "for her use and the support of the three infant children during the time they were with her." The true agreement was that said payments of $400 per month was for the use of Helen Strong Belknap alone, and that the additional $2,100 per year was for the support and maintenance of the three children. The words "and the support of the three infant children during the time they are with her" which appear immediately following the words "to be for her use" were included in said judgment by mistake and contrary to the agreement between the parties.

17. During the year 1937 the trust had distributable income of $18,259.86, which was distributed as follows:

| | |
|---|---|
| To Helen S. Belknap | $ 4,800.00 |
| To Helen S. Belknap for the three children's support | 2,100.00 |
| To William B. Belknap | 11,359.86 |
| Total | $18,259.86 |

(Stipulated).

18. During the year 1938 the trust had distributable income of $18,072.50 which was distributed as follows:

| | |
|---|---|
| To Mrs. Helen S. Belknap | $ 4,800.00 |
| To Mrs. Helen S. Belknap for the children's support | 2,100.00 |
| To William B. Belknap | 11,172.50 |
| Total | $18,072.50 |

(Stipulated).

19. The amounts involved were paid by Fidelity and Columbia Trust Company of Louisville, Kentucky, to Helen Strong Belknap pursuant to the "Agreed Judgment as to Property Rights and Custody of Children" entered by the Oldham Circuit Court on February 25, 1937. (Stipulated.)

20. For each of the years 1937 and 1938 William B. Belknap claimed a deduction in his income tax returns of $400 for each of his three children which claimed deductions were allowed. (Stipulated.)

21. In his income tax returns for the years 1937 and 1938 plaintiff did not include as income the $4,800 paid by the Fidelity and Columbia Trust Company to Helen Strong Belknap, or the $2,100 paid by the Fidelity and Columbia Trust Company to Helen Strong Belknap for the support of the children. The Commissioner's deficiency assessment for the years in question was based upon his contention that these payments in each year should have been properly included by the taxpayer as income for the years in question. The plaintiff has decided since the filing of the action not to urge his contention with respect to the annual payments of $2,100 to

Helen S. Belknap for the support of the three children, and for reasons of his own has conceded that so much of his claim as includes these payments can be eliminated. This leaves for consideration on this phase of the case only the payments of $4,800 in each year to Helen S. Belknap.

22. Plaintiffs paid to the Collector of Internal Revenue on September 23, 1941 the deficiency assessments in the respective amounts of $1,323.96 with interest in the amount of $299.23 for the year 1937, and $3,699.23 with interest in the amount of $560.36 for the year 1938. On or about October 9, 1941 the plaintiffs filed claims for refund for $1,323.96 with interest from March 15, 1938, and in the amount of $3,116.26 with interest from March 15, 1939. On March 23, 1942, the Commissioner of Internal Revenue disallowed the respective claims in their entirety. This action was filed by the plaintiffs on April 29, 1942.

## Conclusions of Law

1. The profit realized by the plaintiff from the sale of his flock of sheep in 1938 is properly included as part of the gross income of the taxpayer for that year. Gross income includes gains, profits, and income derived from salaries, wages or compensation for personal service or from professions, business or sales, or dealings in property, whether real or personal, growing out of the ownership in such property. Section 22(a), Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1008.

2. The gain from the sale of property shall be the excess of the amount realized therefrom over the adjusted basis provided in Section 113(b), 26 U.S.C.A. Int.Rev. Acts, page 1053, for determining gain. Section 111(a) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1041. Section 113(b) of the Act provides that the adjusted basis for determining the gain from the sale of property shall be the basis determined under subsection (a) (in this case the cost of the property), adjusted for exhaustion or wear and tear "to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws."

3. In computing net income for any taxable year there shall be allowed as deductions "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." Section 23(l), 26 U.S.C.A. Int.Rev.Acts, page 1014.

The necessity for a depreciation allowance arises from the fact that certain property used in the business gradually approaches a point where its usefulness is exhausted. The allowance should be confined to property of this nature. In the case of tangible property, it applies to that which is subject to wear and tear, to decay or decline from natural causes, to exhaustion, and to obsolescence due to the normal progress of the art, as where machinery or other property must be replaced by a new invention, or due to the inadequacy of the property to the growing needs of the business. It does not apply to inventories or to stock in trade, or to land apart from the improvements or physical development added to it. Regulations 101, Article 23(1) (2) under Revenue Act of 1938. A reasonable allowance for depreciation may be claimed on farm buildings (other than a dwelling occupied by the owner), farm machinery, and other physical property. A reasonable allowance for depreciation may also be claimed on live stock acquired for work, breeding, or dairy purposes, unless they are included in an inventory used to determine profits. Regulations 101, Article 23(1) (10) under Revenue Act of 1938. Since the flock of sheep in question was not losing its usefulness but was being maintained through the methods adopted by the taxpayer the flock was not the type of personal property subject to an annual depreciation allowance within the provisions of the Regulations above referred to. Also since the sheep were acquired for purposes in addition to breeding, namely, for the sale of wool and for the resale of some of the sheep themselves from time to time, the taxpayer was not properly entitled to a reasonable allowance for depreciation allowed to farmers under the provisions of Article 23(1) (10) of the Regulations above referred to. Since depreciation on the flock of sheep was not allowable to the taxpayer annually, and as a matter of fact it was not claimed for the years in question, the basis for determining the gain on the sale of the sheep in 1938 was their cost, less the depreciation which was erroneously taken and allowed for the years 1930 and 1931. Heath v. Commissioner, 7 B.T.A. 114.

4. The fact that the taxpayer claimed and was allowed depreciation in his income tax returns for the years 1930 and 1931 does not operate as an estoppel against him or as an election on his part so as to

prevent him from declining to take depreciation for subsequent years. Equitable estoppel applies in tax cases only when the following facts are present: The taxpayer, by his conduct, which includes language, acts or silence knowingly makes a representation or conceals material facts which he intends or expects will be acted upon by taxing officials in determining his tax, and the true or concealed material facts are unknown to the taxing officials or they lack equal means of knowledge with the taxpayer, and act on his representation or concealment and to retrace their steps on a different state of facts would cause the loss of taxes to the Government. Robinson v. Commissioner, 6 Cir., 100 F.2d 847, 849. Those facts do not exist in the present case. An election, which is binding on the taxpayer exists where there is available to the taxpayer the choice of one of two rights or things, to each of which he has an equal right, but both of which he can not have. The doctrine of election implies that a taxpayer is given the option of freely taking two courses of action; where there is no freedom of choice and the action taken by the taxpayer is by compulsion of law or is erroneous as a matter of law, the rule is inapplicable. Wm. W. Bierce, Ltd. v. Hutchins, 205 U.S. 340, 346, 27 S.Ct. 524, 51 L.Ed. 828; Pictorial Review Co. v. Helvering, 63 App.D.C. 21, 68 F.2d 766; Mertens Law of Federal Income Taxation, Vol. 10, Section 60.17. See also United States v. Brown, 6 Cir., 86 F.2d 798. In the present case the taxpayer did not legally have the right to choose between claiming depreciation and not claiming depreciation. Whether or not he was entitled to it or was required to take it was a matter of law. His action in erroneously claiming it for the two years in question could have been set aside by the Commissioner. It was binding on neither the taxpayer nor the Commissioner for the years subsequent thereto which are to be governed by a correct interpretation of the law and the regulations applicable to the case.

5. The taxpayer is entitled to a refund of so much of the deficiency assessment as resulted from the Commissioner depreciating the cost of the sheep for the years 1932 through 1938 inclusive.

6. The trust created on July 27, 1925 by William B. Belknap was an irrevocable one and not of the short-term type. Although the grantor retained a right of reversion this was not sufficient to make the income therefrom taxable to the grantor under Sections 166 and 167 of the Revenue Act of 1938, 26 U.S.C.A. Int. Rev.Acts, page 1083. Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796. Although the grantor was also a co-trustee with the Fidelity and Columbia Trust Company, yet he did not dominate the administration of the trust estate and did not reserve such retention of control over the corpus of the trust estate as to substantially continue himself as the owner of the property. Accordingly, the income therefrom was not income to the grantor within the provisions of Section 22(a) of the Revenue Act of 1938. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. See page 343 of 309 U.S., 60 S.Ct. at page 560, 84 L.Ed. 788, of the dissenting opinion of Justice Roberts.

7. In the divorce case filed in the Oldham Circuit Court both William B. Belknap and Helen Strong Belknap sought a judgment of divorce. The counterclaim of Helen Strong Belknap seeking a divorce was dismissed by the Oldham Circuit Court and this part of the judgment was affirmed by the Court of Appeals of Kentucky. Belknap v. Belknap, 265 Ky. 411, 96 S.W. 2d 1012. It is well settled by Kentucky law that where the wife is denied a divorce she is not entitled to alimony. Axton v. Axton, 182 Ky. 286, 206 S.W. 480; Morris v. Morris, 193 Ky. 189, 235 S.W. 358; Taylor v. Taylor, 273 Ky. 802, 117 S.W.2d 983; Wesley v. Wesley, 181 Ky. 135, 204 S.W. 165. By reason of the provisions of Section 2121 of Carroll's Kentucky Statutes, 1936 Edition, and the provisions of Section 425 of the Kentucky Civil Code of Practice, Helen Strong Belknap was under the duty of restoring to William B. Belknap, upon the entry of the judgment for divorce, the interest which she had acquired by reason of her marriage in the trust estate created on July 27, 1925. Instead of availing himself of this right in its entirety William B. Belknap merely reduced her interest in this estate for the future. The agreed property settlement between William B. Belknap and Helen Strong Belknap was therefore a voluntary settlement by William B. Belknap without any legal obligation on his part to do so. The "Agreed Judgment as to Property Rights and Custody of Children" entered on February 25, 1937 did not set aside or dissolve the trust of July 27, 1925. On the contrary it specifically referred to that

trust and merely modified and decreased the rights of Helen Strong Belknap thereunder. Following the entry of that judgment she was no longer entitled to the entire net income from said trust estate but by agreement was limited to $4,800 per year for her own use and $2,100 per year for the maintenance of their three children. If the income from said trust estate was not taxable to the grantor during the time when Helen Strong Belknap was entitled to the entire income therefrom, the reduced amount of $4,800 which she received from the identical trust after the judgment of February 25, 1937 should likewise be not chargeable as income to the grantor.

8. Although Helen Strong Belknap was not entitled to alimony in the divorce case in the Oldham Circuit Court under the general rule in Kentucky above referred to, yet it is possible to construe the ruling of the Kentucky Court of Appeals to the effect that the plaintiff should make suitable financial provision for the defendant as imposing such an obligation upon him by reason of his waiver of his legal rights in the matter through his offer to do so contained in his original petition. If this should be the correct interpretation of the court's opinion, then the judgments subsequently entered in the action in the Oldham Circuit Court on October 30, 1936 and on February 25, 1937 were in reality valid judgments obligating William B. Belknap to make the property settlement therein set out. Under the provisions of Section 2121 of Carroll's Kentucky Statutes, 1936 Edition, and Section 425 of the Kentucky Civil Code of Practice, Helen Strong Belknap lost all of her existing interest in the trust estate created on July 27, 1925, and immediately acquired a new interest in said trust estate by reason of the judgments entered in the Oldham Circuit Court. But even under this view of the case the $400 per month paid to her by the trustee would not be taxable income to William B. Belknap. In Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, the Supreme Court laid down the rule that when, pursuant to a contract, a debt or obligation of a taxpayer is discharged by another for his benefit, the amount so paid is treated as income to the taxpayer; that the creation of a trust by a taxpayer as the channel for the application of the income to the discharge of his obligation leaves the nature of the

transaction unaltered. See also Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; United States v. Boston & M. R. R., 279 U.S. 732, 49 S.Ct. 505, 73 L.Ed. 929. It was pointed out in that opinion that amounts paid to a divorced wife under a decree for alimony are not regarded as income of the wife but as paid in discharge of the general obligation to support, which is made specific by the decree. See also Gould v. Gould, 245 U.S. 151, 153, 38 S. Ct. 53, 62 L.Ed. 211; Audubon v. Shufeldt, 181 U.S. 575, 577, 21 S.Ct. 735, 45 L.Ed. 1009. Accordingly, it was held in Douglas v. Willcuts, supra, that income paid to a divorced wife from a trust estate in lieu of and in settlement of alimony where the trust was merely security for the grantor's continuing obligation was income properly chargeable for income tax purposes to the husband who created the trust. This rule was restated and again applied in Helvering v. Fitch, 309 U.S. 149, 60 S.Ct. 427, 84 L.Ed. 665, and in Helvering v. Leonard, 310 U.S. 80, 60 S.Ct. 780, 84 L.Ed. 1087, in which opinions it was pointed out that escape from the rule could only be had on clear and convincing proof that local law and the alimony trust have given the divorced husband a full discharge and left no continuing obligation however contingent; that where the trust agreement was in essence merely security for a continuing obligation of the husband, such as where he guaranteed a certain return from the trust estate, or where his obligation could be later increased by the local law, the income paid by the trustee to the wife was still taxable to the husband. In the trust in the present case there was no guarantee on the part of the taxpayer to make up any deficiency if the trust estate did not yield the $4,800 per annum to the divorced wife. And under the Kentucky law such a settlement as was entered into between William B. Belknap and Helen Strong Belknap is a final settlement of the property rights between them and can not be modified, changed, or increased at a later time by the court. Turner v. Ewald, 290 Ky. 833, 162 S.W.2d 181; Hargis v. Hargis, 252 Ky. 198, 66 S.W.2d 59; Renick v. Renick, 247 Ky. 628, 57 S.W.2d 663; Keach v. Keach, 217 Ky. 723, 290 S.W. 708. The Supreme Court has ruled that under such conditions the rule established by Douglas v. Willcuts, supra, did not apply, and that the income paid from such a

trust to the divorced wife was not chargeable for income tax purposes to the husband. Helvering v. Fuller, 310 U.S. 69, 60 S.Ct. 784, 84 L.Ed. 1082; Pearce v. Commissioner, 315 U.S. 543, 62 S.Ct. 754, 86 L.Ed. 1016.

9. This action was tried on May 26, 1943, and following the filing of briefs submitted in chief. By written memorandum of August 21, 1943 the court ruled that certain evidence offered by the plaintiff on a question of fact raised during the trial, which the court had refused to receive because of being inadmissible as a matter of law, should have been admitted and directed a supplemental hearing on that issue of fact alone. On November 12, 1943 the defendant tendered an amended and supplemental answer pleading as a defense the failure of the plaintiffs to bring to the attention of the Commissioner of Internal Revenue by claim for refund the contention that the judgment of the Oldham Circuit Court of February 25, 1937 did not correctly state the true agreement of the parties and that recovery was now sought on a different and unrelated ground than the one relied upon in the claim for refund in violation of Section 3226 of the Revised Statutes, Section 3772 of Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3772. That statute provides that no suit for the recovery of any internal revenue tax alleged to have been illegally collected shall be maintained until a claim for refund has been duly filed with the Commissioner. The claim for refund filed by the plaintiffs was based upon the following ground as stated therein: "That the income of $8,016.10 in 1937 to Taxpayer's former wife from an irrevocable trust does not represent income to him and should not be taxed to him." (The claim for refund of 1938 taxes was the same except for amount and date). It has been several times held that a claim which fairly advises the Commissioner of the nature of the taxpayer's claim and which is not rejected by the Commissioner because of lack of details, but is acted upon by him as sufficient in its general form complies with the statutory requirement. Lucas v. Fidelity & Columbia Trust Co., 6 Cir., 89 F.2d 945; Reynolds v. McMurray, 10 Cir., 77 F.2d 740; McKesson & Robbins v. Edwards, 2 Cir., 57 F.2d 147; Foster Box Board Co. v. Clarke, D.C.N.D.N.Y., 7 F.Supp. 682. See also Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed.

253; United States v. Kales, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132. In this case the judgment under consideration is one phase of the trust issue and not a separate, independent ground of relief. The amended and supplemental answer raising the issue was not tendered until several months after the case was tried and submitted. The court rules that the claim for refund as filed and as treated by the Commissioner was a sufficient compliance with the statute.

10. The Commissioner erred in making the deficiency income tax assessment against the taxpayer by reason of the $4,800 per year paid by the trustees to Helen Strong Belknap in the years 1937 and 1938 and the taxpayer is entitled to recover the amount which he was caused to pay by reason of such ruling.