" Madeline Lorenzo ", Petitioner, *v.* " Michael Lorenzo ", Respondent.*

Domestic Relations Court of New York, Family Court, Bronx County, July 26, 1944.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act.

APPLICATION by wife for support.

*John F. Spellman* for petitioner.

*Salvatore M. George* for respondent.

SICHER, J. The parties were duly married on September 20, 1941, and separated on December 14, 1941.

Petitioner was then already pregnant, but the child died at birth on June 21, 1942, and petitioner is still seriously disabled by pelvic disease incident to the delivery.

The parties give the lie to each other on certain facts " of such an intimate character that necessarily the direct testimony must be oath against oath " (*Risk* v. *Risk,* 202 App. Div. 299, 302); obviously, there is here applicable the doctrine that " Where truth hangs upon the credibility of the witnesses, courts should consider the advantages of the trial court who has seen and heard the witnesses " (*Smith* v. *Smith,* 273 N. Y. 380, 383). That doctrine is especially pertinent to matrimonial litigation (*McKee* v. *McKee,* 267 N. Y. 96, 100), as is also the cognate principle that " the demeanor of a witness on the stand may always be considered in an estimation of his credibility, and demeanor is always assumed to be in evidence." (*Rains* v. *Rains,* 17 N. J. Mis. Rep. 310.)

Accordingly, wide latitude of examination was accorded to experienced counsel at a full hearing on June 21, 1944. At its conclusion petitioner was adjudged to be entitled to support " according to respondent's means " (pursuant to N. Y. City Dom. Rel. Ct. Act, § 92, subds. 1, 6, and § 101, subd. 1; L. 1933, ch. 482); but decision was reserved on the question of the legal effect of the pendency of a prior separation action and the amount of the final order. Meanwhile, there was continued the temporary order of $5 a week entered May 3, 1944.

The petition herein was filed on March 24, 1944.

In January, 1942, petitioner had instituted an action for separation in the Supreme Court of the State of New York, New York County, and moved for alimony of $25 a week and counsel fee of $250 *pendente lite.* That motion was contested, but eventuated in a February 2, 1942, order awarding temporary alimony of $9 a week and counsel fee of $75 (payable in five monthly installments of $15 each, beginning February 1, 1942).

Respondent has made none of the temporary alimony or counsel fee payments directed in that order; but no contempt proceeding was ever started.

Respondent was in the United States Army from April 16, 1942, until August 16, 1943, and petitioner received a service-

man's dependents' allowance of $50 a month during that period.

The April 25, 1944, physical examination report of Dr. Chancellor H. Whiting (Director of the Physiological Laboratory of this court) concerning petitioner, states: " this patient is unable to work at the present time and requires hospitalization to completely evaluate and cure her condition " — pelvic complications resulting from the aforementioned confinement. Because of that serious impairment of her health petitioner has been, and still is, unable to maintain herself, and, since the termination of the serviceman's dependents' allowance, has been dependent upon the bounty of her father.

Although the father's home (which is at D——, Pa.) is doubtless still open to her, the legal obligation of a father to support an adult daughter is wholly statutory; it is secondary to the primary obligation of the husband; and it may be invoked by the Department of Welfare of the City of New York on an application for home relief but not by the husband in self-exoneration.

Upon all the evidence I hold that petitioner is entitled to support both under the provisions of subdivisions 1 and 6 of section 92 of the New York City Domestic Relations Court Act, and also on the further ground that she is now likely to become a public charge unless respondent discharge the deep-rooted obligation of a husband to support his wife which " continues as long as the marriage relation is not dissolved or limited by a decree of divorce or separation " (*People* v. *Schenkel,* 258 N. Y. 224).

But even if petitioner were held not to be likely to become a public charge, the prior institution of the not yet discontinued separation action would not preclude the entry of an order of this court for petitioner's support at this time. The broad language in *Matter of Costa* v. *Costa* (247 App. Div. 192, 193) to the effect that the fact that petitioner is likely to become a public charge " constitutes the only basis for the exercise of jurisdiction by the Domestic Relations Court during the pendency in the Supreme Court of an action for separation between the parties ", should not be deemed applicable to distinguishable factual situations; for example, a case like that at bar, where resort to the Family Court during the pendency of a Supreme Court action is expressly allowed by the provision of subdivision 2 of section 137 of the New York City Domestic Relations Court Act, which reads, insofar as pertinent: " Where * * * an action for * * * separation * * * is pending, and the husband * * * shall have been required under

the terms of any order  *  *  *  entered in such supreme court action, to pay a specified sum to the spouse  *  *  *  as alimony *  *  * and has failed to do so, a proceeding may be instituted in the family court to compel support within the limits of the order  *  *  * of the supreme court and as set forth by section ninety-two of this act, unless the respondent is in jail for failure to obey the order of the supreme court.''

Dr. Whiting's April 27, 1944, report of his physical examination of respondent concludes: '' I believe that with another month or six weeks treatment at the Veteran's Hospital, which he is now receiving, that his ulcer should become quiescent, and he will be able to work at some regular job, which of course must not be too heavy.''

From respondent's testimony and demeanor I am satisfied that, notwithstanding such partial disability, he has substantial potential earning capacity under prevailing labor market conditions, in addition to his veteran's disability allotment of ten dollars a month; that he is a self-centered, self-indulgent and slothful individual, lacking a proper sense of his legal and moral obligations to petitioner; and his attitude toward this court has been contumacious and evasive, expressed partly by his first attempting to conceal from the investigating probation officer an account in the X Trust Company and his then withdrawing the entire amount ($235.02) on April 20, 1944 (which was the day after a preliminary hearing in this court).

As above stated, petitioner is entitled to support according to respondent's means and not merely on a public-charge basis. However, the distinction between those two measures of support is *at this time* largely academic; the order entered today is in amount less than the low subsistence level of a '' public charge basis '' liability, even though it rests also in part upon exercise of the power '' to order support of a wife  *  *  * irrespective of whether '' she '' is likely to become a public charge, as justice requires having due regard to the circumstances of the respective parties '' (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 1). For, there exists the maximum limitation of $9 a week imposed by the outstanding Supreme Court *pendente lite* order (N. Y. City Dom. Rel. Ct. Act, § 137, subd. 2), and the '' circumstances '' here include the shortness of the marriage relationship, the fact that there are now no living issue, and respondent's as well as petitioner's impaired health.

For the foregoing reasons, the court finds that respondent is chargeable with support as alleged in the petition, according to his means, and he is hereby ordered and directed to pay into

this court the sum of $7.50 weekly, each and every week, beginning July 31, 1944, for the support of petitioner, until further order of this court; and, *in addition*, he is hereby directed to deposit by 10 A.M. on July 31, 1944, the full amount of the temporary order arrears, hereby fixed at $45 (less any amount deposited since July 10, 1944, up to and excluding the first final order installment of $7.50 due July 31, 1944).

That final order sum is based on potential earning capacity and is subject to modification when respondent's actual earnings will have been determined after a sufficient period to be reasonably indicative; and the amount may become greater than $9 a week after and if the Supreme Court action will have been discontinued.

In view of respondent's demonstrated lack of sense of responsibility, his disregard of the temporary order directions, his withdrawal of the $235.02 from the bank on April 20, 1944, and to assure compliance with the foregoing order for discharge of all temporary order arrears and as security for the payment of the first ten weekly installments of the final order sum, respondent is hereby ordered to post, by 10 A.M. of July 31, 1944, a cash bond in the sum of $120 (less, however, the amount, if any, of payments between today and July 31, 1944, on account of those arrears) or in default of furnishing such surety to stand committed to the Warden or Keeper of the City Prison, or Jail, or Workhouse of the City of New York for a period of three months from date of commitment, or pending further order of the court (see N. Y. City Dom. Rel. Ct. Act, § 92, subd. 11; §§ 151, 154; and *Monroe* v. *Monroe,* 45 N. Y. S. 2d 589).

Notice shall be given to the parties pursuant to the subjoined direction.